## Livezey et al., Executors, Appellants, *v.* Northern Pacific R. R.

[Marked to be reported.]

*Corporations—Transfer of stock—Refusal—Damages.*

A corporation is not liable in damages for refusing to transfer stock, held in the name of a decedent, where the right of the executors to sell the stock is doubtful, or where the executors have impeached their own title to make the transfer.

Executors applied to a corporation to have certain stock of the company transferred to their vendee. On examination of the will, counsel for the corporation advised that the executors had no power to sell the stock, but were bound as trustees to hold it in trust for the purposes designated in the will. By an ex parte proceeding in the orphans' court, the executors procured an order authorizing them to sell the stock. This order was submitted to the corporation, which still refused to make the transfer. Subsequently a son of the testator of exactly the same name as his father, wrote to the corporation claiming that the stock belonged to him. The

executors assented to this claim. Owing to the uncertainty as to the title the corporation refused to issue new certificates to the son, but stated that they were willing to transfer the stock to the executors. About seven months after the original demand was made, new certificates were issued to the executors. In the meantime the stock had depreciated in value. *Held*, that the corporation was not liable to the executors for this depreciation.

Argued March 27, 1893. Appeal, No. 259, Jan. T., 1893, by plaintiffs, Ann L. Livezey, John Livezey and Thomas Livezey, Jr., executors of Thomas Livezey, deceased, from order of C. P. No. 1, Phila. Co., March T., 1892, No. 492, refusing to take off nonsuit. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for damages for refusal to transfer stock.

The facts appear by the opinion of the Supreme Court.

By testator's will, all his property, real and personal, was given to his executors, the plaintiffs, in trust to pay the income only to his widow during her life. After the widow's death the corpus of the estate was to be divided into five equal parts, two of which the testator gave absolutely to his sons John and Thomas Livezey, Jr., the plaintiffs. The remaining three parts were given, devised and bequeathed " unto my executors hereinafter named, and the survivor of them in trust to invest the personal property and keep the same invested," etc., upon three separate trusts.

Further sections of the will are as follows :

" 12. I desire my executors not to sell any of my stocks that may be depreciated in market value but to retain the same trusting to a rise.

" 13. All investments to be made by my executors shall be in either: United States registered bonds, city sixes or other city loan, first mortgages on real estate to not more than one half of the property mortgaged, or first mortgage interest-paying registered bonds of a good railroad company. Provided, however, that other investments may be made with the assent of the cestuis que trust.

" 14. I authorize my executors to sell any part of my real estate whenever they think it best to do so, and to make good and sufficient deeds therefor to the purchaser and invest the proceeds therefor as above provided."

The codicil to testator's will provides :

" 3. Whereas, in the sixteenth clause of my will, I direct that no real estate shall be sold by my executors after the division without the consent of the cestui que trust. Now I also direct that after such division no securities so held in trust shall be sold without the consent of the cestui que trust."

The division referred to was to take place after the death of the widow, who still lives.

The court entered a compulsory nonsuit, and subsequently refused to take it off.

*Error assigned* was refusal to take off nonsuit.

*Hood Gilpin*, for appellants.—The executors in the estate of decedent may transfer the stock of the estate, and convey a title which the corporation is bound to recognize, although the corporation itself is domiciled in another state : Hobbs v. Bank, 8 W. N. 131 ; Cape May & Delaware Bay Nav. Co., 16 Atl. R. 191 ; Wilkins v. Ellett, 9 Wal. 742.

At this time, on the facts of the case, no one can reasonably say that there was no evidence from which the jury might not have found that Thomas Livezey, the decedent, owned this stock. No one doubts it. The defendant itself always asserted it to be decedent's stock and finally transferred it on the powers of attorney given by the executors. It was included in the inventory of the estate.

As under the will plaintiffs had the right to transfer, and defendants after suit brought admitted their right, the court below should have left it to the jury to say whether plaintiffs owned the stock, and whether defendant was prevented by plaintiffs' acts from making and justified in refusing this transfer. There can be no question of estoppel, because defendant was not led into any course of action by the conduct of plaintiffs. During the whole controversy it refused to alter its position, until, suit brought, it made the transfer. The only estoppel in this case is on the part of plaintiffs, who cannot be permitted to say, after procuring a transfer as executors, that either of them is, has been or may be the individual owner of the stock.

*Richard C. Dale, Logan M. Bullitt*, with him, for appellee.— Plaintiffs failed upon the trial to show that the certificates of

stock which defendant company refused to transfer were the property of decedent, of whom they are executors.

If it be assumed that the stock belonged to plaintiffs' testator, then, by the terms of testator's will, plaintiffs were not justified in making a sale or transfer, and defendant was bound to see that no improper transfer was made : Bayard v. Bank, 52 Pa. 232; Angell & Ames, Corp. § 587 ; Loring v. Salisbury Mills, 125 Mass. 138; Cook on Stockholders, § 327.

The burden is always on the trustee alleging the *power* of sale to point out such power in the instrument creating the trust : Perry, Trusts, § 767 ; Lewin, Trusts, 8th ed., p. 427 ; Drake v. Whitemore, 5 D. G. & S. 619; Blacklow v. Laws, 2 Hare, 40 , Kellaway v. Johnson, 5 Beav. 319.

The fact that defendant is subject to the jurisdiction of the court for the service of process does not make it subject to the provisions of the Pennsylvania statute regulating transferring of stock.   The statutes of a state can have no extra territorial effect : Morgan v. Neville, 74 Pa. 52; Rorer on Interstate Law, 167.

The order of the orphans' court, which was offered in evidence, afforded no protection to the railroad company in making the transfer.

*Hood Gilpin,* in reply.—The case of Bayard v. Bank, 52 Pa. 232, turned not upon the authority of Thomas F. Bayard, trustee, to transfer the stock on the books of the bank, but upon the trustee's right to transfer without disclosing any authority whatever for so doing.   The case as reported does not disclose what the trustee's authority was in the instrument appointing him, as the trustee refused to give the bank any information whatever as to the extent of his authority.   Under these circumstances the bank properly refused to make the transfer until the instrument containing the trustee's authority was disclosed.

This case, together with the three English cases cited by appellee, Drake v. Whitmore, 5 D. G. & S. 619; Blacklow v. Laws, 2 Hare, 40; Kellaway v. Johnson, 5 Beav. 319, were all cases of specific gifts of which the specific legatees would take the income and which were compelled to be held to be enjoyed by the cestui que trust in specie : Perry, Trusts, § 451.

In a case where testator gave to his wife the whole of the interest arising from his property, both real and personal, during her life, and at her decease to be disposed of as therein directed, it was held that the trustees must convert, as there was no indication that she should enjoy any of the property in specie : Perry, Trusts, § 451; Benn v. Dixon, 16 Sim. 21; Thornton v. Ellis, 15 Beav. 193 ; Morgan v. Morgan, 14 Beav. 92; Blann v. Bell, 2 D. G., M. & G. 775 ; Hood v. Clapham, 19 Beav. 90 ; Litchfield v. Baker, 13 Beav. 447.

OPINION BY MR. JUSTICE GREEN, October 2, 1893 :

This action is brought to recover damages for the wrongful refusal of the defendant company to transfer one hundred shares of its own stock at the instance of the executors of the former owner.

For the purpose of the present contention it may be assumed that the stock did really belong to Thomas Livezey, the decedent, in his lifetime, and at the time of his death, though the testimony of the plaintiffs casts serious doubt upon that subject. Assuming then that Thomas Livezey, the decedent, was the true owner of the stock, he executed a will which was duly probated after his death in May, 1884. For more than six years after his death his executors, these plaintiffs, held the stock without selling it or making any demand for its transfer. Presumably therefore its transfer was not needed for the payment of any debts, or, for that matter, of any legacies either, and in point of fact was not needed for either of these purposes.

When the executors applied to have the stock transferred it was in consequence of a sale of it having been made by them to a third person. In those circumstances it was not only the right, but the duty of the defendant to inquire into the right of the executors to make the sale. A copy of the testator's will was therefore requested by the defendant and was furnished to them by the executors. When the will was examined by the counsel for the defendant he was of opinion that the stock was held in trust by the executors during the life of the widow, and that they had no power to sell it, both because it was a part of the trust fund, and because it was a depreciated security which the testator directed his executors not to sell but to hold for a rise. The counsel for the defendant however

offered to advise a transfer if the executors would make application to the orphans' court and obtain a decree authorizing the executors to sell the stock, if the decree would be so drawn as to show on its face all the jurisdictional facts. A petition was subsequently presented to the orphans' court of Philadelphia county by the executors, asking for an order authorizing them to make sale of the stock, and to make a valid transfer thereof. The proceeding appears to have been ex parte only, as neither the cestuis que trust, nor the defendant company, were made parties. However, after this had been done a copy of the order was sent to the defendant, together with an irrevocable power of attorney, signed by all the cestuis que trust, and a further request to permit the transfer to be made, to which the counsel for defendant replied that he would lay the whole matter before the general counsel of the company, and if they could see their way clear to make the transfer they would direct it to be done. After this, on Dec. 26, 1890, the counsel for the defendant, Mr. Stanton, wrote to the counsel for the executors, saying that having consulted with the general counsel for the company they had felt obliged to decline to advise the transfer of the stock, for reasons which were stated at length. The substance of these reasons was, that by the will Mr. Livezey gave all his property to his executors in trust to pay the income to his wife during her life, and upon her death to divide it among her children, in the manner stated in the will, and that by the fourth article of the will he directed that no part of the corpus, or principal, of any part of his personal estate should be given to his wife; that the reason for selling the stock given by the executors, that the stock was depreciating in value, was in' hostility with the twelfth section of the will, which directed that the executors should not sell any of his stocks that were depreciating in market value, but should " retain the same trusting to a rise ; " that the defendant company had been furnished with a copy of the will, and therefore had notice of the trust and were bound to refuse transfer, except according to its terms ; that they could not agree to the proposition maintained by the executors, that they are to be treated as executors merely, and not as trustees, and that when a stockholder directs by his will that his stock shall be held in trust the corporation is not at liberty to avoid his directions.

Upon an examination of the will we feel obliged to say that these positions seem to be well taken. The second clause of the will does give the testator's property to the executors in trust for the purposes named in the succeeding clauses, one of which is that the income of the whole estate shall be paid to the widow during her life, and that after her death the estate is to be divided into five equal parts which are then disposed of in favor of the children in the manner described in the will. Power is given to the executors to sell the real estate and re-invest the proceeds according to the trust, but no power is given to sell the personal estate, and by the 12th clause they are enjoined not to sell any of the stocks that are depreciating in value.

It is not necessary for us to consider or decide now, absolutely, the question whether or not, if the proper parties were before us, in a proper proceeding, instituted for the purpose, a decree should be made empowering the executors to make sale of this stock, and directing the defendant company to make the necessary transfers of it, because the present is not a litigation for that purpose, nor is any such proceeding pending, nor any such question before us. The defendants did eventually waive the question, and made the transfer at its own risk; nor is that circumstance of the slightest consequence, in considering the question that is before us, and that is, whether a recovery in damages can be had in this action as for a wrongful refusal to transfer.

The situation of the case and the parties, and the question of the right of the plaintiffs to have a transfer, and the duty of the defendant as to permitting a transfer, were much complicated by the conduct of the plaintiffs during the correspondence and while the subject was under discussion.

The first application for the transfer was made in October, 1890. Replying to this on October 20, 1890, the treasurer of the company said it would be necessary to have a certified copy of the will of Thomas Livezey. This seems to have been furnished on October 28th, as a letter of the 29th from the treasurer says that the matter has been referred to the defendant's attorney, and that if he decides that the transfer is made in accordance with the will it will be made as desired. On the 31st he wrote again saying that the attorney decided the transfer could not be made under the provisions of the will. Then on

November 3, 1890, Mr. Allison, as attorney for the executors, wrote to Mr. Stanton, attorney for the defendant, suggesting an application to the orphans' court for a decree authorizing the executors to sell the stock, and on the next day he wrote again making a further suggestion as to the manner of making a transfer and presenting reasons why he thought the defendant would be safe in doing so, and saying also that the estate was solvent and there were no creditors.   On the 15th of November Mr. Stanton replied, asking again to have the copy of the will returned to him so that he could re-examine the question.   On the 28th of November Allison again wrote to Mr. Stanton, saying the transfer was to be made by the executors and not by the trustees, and that the executors, as such, were the legal owners of the stock and had the right to transfer it, and he inclosed an irrevocable power of attorney, signed by all the cestuis que trust, authorizing the transfer, to which Mr. Stanton replied on December 3d, expressing his regret that he could not agree with Mr. Allison as to the right of the executors to hold the stock as executors, or to transfer it as such, as he considered the stock was held by them as trustees and could not be transferred, on account of the trust created by the will. He however expressed his willingness to advise the transfer, if a decree was obtained from the orphans' court setting forth all the jurisdictional facts and directing the sale.   On December 9th Mr. Stanton again wrote to Mr. Allison re-inclosing the certificates, the copy of the will, the power of attorney and the short certificate of the deputy register, and on December 16th Mr. Allison wrote to Mr. Stanton, inclosing the certificates and a copy of the decree of the orphans' court authorizing the sale.   To this Mr. Stanton replied, asking for the other papers, and saying upon their receipt he would lay the whole matter before the general counsel of the company, and that if they could see their way clear they would advise the transfer.   On December 26th Mr. Stanton wrote a final letter to Mr. Allison, saying he had conferred with the general counsel of the company, and they had reached the conclusion that the transfer could not be lawfully made, for the reasons he set forth at length, and which have been hereinbefore fully stated, and returning all the papers.   This seems to have ended the correspondence for the time    In the meantime the price of the stock

had advanced somewhat, and it was 73⅝ in September, 1891, as against 72⅛ on October 16, 1890.  Some correspondence passed between Mr. John Livezey and Mr. C. B. Wright, a large stockholder, in January, 1891, which resulted in a letter from Mr. Stanton to Mr. Wright on February 26, 1891, explaining the reasons why he could not advise the transfer.  This was followed by a letter from Thomas Livezey, one of the executors, to Mr. Oates, president of the company, which was referred to Mr. Baxter, treasurer, who replied to Mr. Livezey again, stating the difficulty to be that the stock was really held by trustees who had no power to sell, and were bound to hold it during the life of the widow, but adding that there would be no objection to transferring the stock to the executors.

So far the communications between the parties were conducted upon the theory that the stock belonged to Thomas Livezey, the decedent.  On April 22, 1891, Thomas Livezey, the son, and one of the executors, wrote to Mr. Baxter, the treasurer of the defendant company, claiming that the stock was his and that the executors had nothing to do with it, and that the company had no right to transfer it to the executors.  On October 14, 1891, Thomas Livezey again wrote to Mr. Baxter, asking for new certificates in place of his old ones, and saying that he had settled all his obligations with the estate and that George Woolery, to whom the stock had been sold and a written transfer made, had nothing to do with them any more.  On October 22, 1891, he again wrote to Mr. Baxter, challenging the right of the company to transfer the stock to the executors because it was his stock, and saying the executors had nothing to do with it.  On November 9, 1891, Mr. Stanton wrote to Thomas Livezey in answer to the letters of October 14th and 22d, saying that the executors had formerly applied to have the stock transferred to George Woolery, and that the company declined to do so, because it was held in trust under the will, and saying further that now he, Thomas Livezey, the son, claimed that the stock was his and never belonged to the estate at all, and offering that if the executors would now write the company a letter stating that the stock did not belong to his father at the time of his death, but that it belonged to him, the son, and would explain how it happened to be put in his father's name, the company would transfer it to him upon the ordinary trans-

fer signed by the executors.  In reply to this, on December 16, 1891, Thomas Livezey wrote to Mr. Stanton a letter in which he declared that the stock was merely held by Thomas Livezey, deceased, as security for a loan to him, and that the executors, when they could not sell it to Woolery, made him take it back and that that was the way it had " got tangled in with the estate of Thomas Livezey, Sr.," that it had never been transferred out of his own name, and that he did not see what the executors had to do with his getting a new certificate.  To this letter the other executors added a statement in the following words : " The foregoing is correct."

                    (Signed)             JOHN LIVEZEY,
                                         A. L. LIVEZEY,
                                                  Executors.

It thus appears that by the end of December, 1891, the claim of title to the stock had been entirely changed, and that all the executors participated, first, in claiming that the stock belonged to Thomas Livezey, deceased, and that his title enured to them as his executors ; and, second, in claiming and asserting, in formal written communications, addressed to the treasurer and the counsel for the defendant company, that the stock belonged to Thomas Livezey, the son of the testator, that it was only held by his father as collateral security, and that the executors had no title to it.  In this very remarkable and contradictory state of affairs, the real condition of the title became a matter of great uncertainty, and accordingly Mr. Stanton, on January 15, 1892, wrote to Mr. Thomas Livezey, reciting the contradictory assertions which had been made by him and the executors, and saying that he was at a loss to understand how it was that they had all joined in a petition addressed to the orphans' court, in which they asserted that the stock belonged to Thomas Livezey, deceased, and formed part of the assets of his estate, and asking quite emphatically for an explanation of the discrepancy before he could advise a transfer.  To this the only reply that was sent was by letter of Thomas Livezey of January 27, 1892, saying he only wanted new certificates as the old ones were written over, and that he did not ask a transfer to any one.  To this Mr. Stanton replied that no new certificates could be issued except to the executors of Thomas Livezey, deceased, and if they would apply for them they would be so issued.  To this

Thomas Livezey answered on February 16, 1892, inclosing the two certificates which he said were his, and asking to have them transferred in some way so that he could get them transferred into his own name.   To this Mr. Baxter replied on February 18, 1892, returning the certificates and saying that no transfer could be made except as had been before advised.   After some further correspondence of no particular importance, the present suit was brought by the executors on April 2, 1892, claiming damages for the depreciation in the price of the stock during the time of the correspondence which, it is alleged, amounted to about $1,900.

It will be observed that the defendant company at no time refused, willfully or arbitrarily, to transfer the stock, but agreed to do so at several times, either if a satisfactory decree of the orphans' court could be obtained, or a transfer to the executors would be accepted, or if the executors would disclaim all title, to Thomas Livezey himself.   But none of these conditions was complied with, and the defendant was confronted with a trust in the will which gave the stock as a part of the testator's personal estate to trustees for the life of the widow and to distribute the same after her death to the children, and secondly, they were met by two conflicting and contradictory claims of title to the stock, the executors participating in both.   How was the company to act in such circumstances?   They could not comply with both demands.   The claim of title by Thomas Livezey personally was made while the correspondence with respect to the claim by the executors was pending, and before it was completed.   And to make the matter much worse and more complicated, the executors themselves acquiesced in that claim and signed a letter disclaiming title in themselves.   It is not to be wondered at, that they finally refused to make any transfer except to the executors.   In such a condition of conflicting claims the company was not bound to take any risk of the title of the true owner.   They had notice of the trust and were therefor bound by its terms, and they also had notice of the claim of title by Thomas Livezey which was sanctioned by the executors in a written communication to the defendant company.   They had a right to be protected by a judicial decree in an adversary proceeding in which all parties interested should or might intervene, before they could be convicted of

a wrongful refusal to transfer, and such a proceeding was never commenced.

We think this case comes within the principles established in a very carefully considered opinion by Mr. Justice Strong in Bayard v. Farmers' and Mechanics' Bank, 52 Pa. 232. It was an amicable action and case stated to recover damages for an alleged wrongful refusal to transfer stock by a bank, which as agent of the commonwealth had issued certificates of the five per cent stock of the commonwealth to Thomas F. Bayard, trustee of Mary Gilpin. After her death Mr. Bayard sold $4,000 of the stock to a third person and by power of attorney authorized its transfer to his vendee. The bank refused to permit the transfer until the terms of the trust were submitted to their attorney, and he should be satisfied that the sale was made in due execution of the trust. This Mr. Bayard declined to do and brought the action. The court below gave judgment for the defendant which was affirmed by this court. Judge Strong, in delivering the opinion, said: " Passing by the question whether the defendants, being mere agents of the commonwealth, are liable to damages at the suit of the plaintiff, even for a wrongful refusal to permit him to transfer the stock, we come immediately to the question whether their refusal was wrongful. Certainly they were under no obligation to permit a transfer, if their permission would have exposed them or their principals to a successful claim by any one for the replacement of the stock or for its value. In a certain sense, they were custodians of the rights of stock owners. With them was the registry, and transfer could be made only with their consent by the surrender of the certificates and the issue of new ones to the transferee. A purchaser of stock does not receive the certificate of his vendor, but a new one made out in his own name, and reciting nothing contained in the former. He is therefore protected in the enjoyment of his purchase, even though there was no right to make the transfer to him. For this reason an unauthorized transfer is a wrong done to the owner of stock, for which not only the person who makes it, but any one knowingly assisting in the wrong, is responsible. That a bank or other corporation, and also these defendants, are trustees to a certain extent for stockholders—that is, for the protection of individual interests—cannot be denied. They

are alike trustees of the property and of the title of each owner. They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation.    From this it results that they may rightfully demand evidence of authority to make a transfer before they permit it to be made.    Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes.    Generally, sufficient evidence of such right is the possession of legal title to the stock.    Yet it is well settled that it is not in all cases sufficient, notwithstanding that the true equitable ownership might be in some other than the holder of the legal right, and a transfer may be a gross wrong to such an equitable owner.    To that wrong the corporation or keepers of the register make themselves parties, if with knowledge that there is no equitable right to transfer, they permit it to be done. . . . No purchaser either of land or personalty would be safe in buying from a known trustee without looking at the nature and extent of his trust.    It is true a trustee may have power to sell, but the power is not a necessary incident to his trust as it is to the office of an executor.    He may have the legal title, and yet have no authority to sell.    His sale may be entirely unauthorized by the instrument that created the trust; it may have been forbidden.    Why then does not a bank or a transfer agent act at its peril when permitting him to make a transfer?    If in truth he has no such power, the bank by accepting his certificates and issuing others in lieu thereof to his transferee, is assisting him to destroy the rights of the cestui que trust.    It has even been held that a corporation is liable if it permit a transfer by a lunatic holding a legal right, though it had no knowledge of the lunacy and was guilty of no actual fault: Chew & Goldsborough v. The Bank of Baltimore, 14 Maryland, 299.    The reason given was that it might have provided against the transfer by precaution.    If thus liable when only the innocent cause of a loss, much more is the liability certain when the transfer is permitted with full knowledge that the stock does not belong to the person who offers to transmit it to another; if the transfer is in fact unathorized such knowledge was given in this case by the form of the certificate."

It is not necessary to prolong the citation nor to refer to other

authorities. The title of these executors was clogged with a trust as to these certificates which apparently prohibited their sale. We cannot now decide absolutely that question because we have not before us either the proper parties or the proper proceeding. But the right of the executors to sell the stock was, to say the least, quite doubtful, and the defendant was not bound to take the risk of the doubt, and is not to be held guilty of a wrongful refusal to transfer for simply observing the trust imposed by the will upon the executors. Much less were they guilty of a wrongful refusal when both the executors and Thomas Livezey, the son of the deceased, united in a written declaration that the stock never was the property of the deceased and was the property of the son, and persisted in that declaration until the final refusal of the defendant to transfer the stock to any persons but the executors. We do. not think the executors, who are the plaintiffs in the present action, have any right to have damages as for a wrongful refusal to transfer to their vendee, when they impeached their own title to make that transfer.

Judgment affirmed.

MR. JUSTICE MITCHELL dissented.