Leff, Appellant, *v.* N. Kaufman's, Inc., et al.

Argued May 12, 1941. Before MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

Albert C. Hirsch, with him C. S. Shumaker, of Hirsch, Shumaker, Demmler & Bash, Linn V. Phillips and Samuel Silverman, for appellant.

Elder W. Marshall, with him E. J. McDaniel, F. T. Ikeler and Reed, Smith, Shaw & McClay, for appellees.

OPINION BY MR. JUSTICE DREW, June 30, 1941:

Plaintiff obtained an alternative writ of mandamus against the defendant corporation and its officers to show cause why the transfer to plaintiff of six shares of its common stock should not be registered upon its books. A return was filed alleging that Joseph W.

Ray, Jr., the registered owner of the stock had never delivered or transferred the shares certificate to plaintiff; that plaintiff's possession of the certificate is fraudulent and without authority, and that the stock was held by Ray in trust for plaintiff, president of the corporation, and Nathan Kaufman, secretary of the corporation, jointly. Kaufman intervened as a beneficial owner of the shares. The issues were tried in the court below before a jury and a verdict was directed in favor of defendants. Plaintiff's motions for a new trial and judgment n. o. v. were refused, judgment was entered on the verdict, and this appeal by plaintiff followed.

At the trial the following facts were admitted: The defendant is a domestic corporation engaged in the business of retail merchandising at Uniontown, Fayette County. It was formed in 1933 by plaintiff, Kaufman and their attorney Ray. Plaintiff advanced all of the original capital, accepting Kaufman's note for one-half thereof, which has been paid with interest. There are 250 shares of capital stock outstanding. Kaufman owns 22 of these, and his wife, 100. Plaintiff owns 12 shares, and his son, 110. The remaining six shares, which are the subject of this controversy, were issued to Ray on September 15, 1933, without consideration, to enable him to serve as a director. The certificate was endorsed by him in blank and left in the stockbook, from which it was detached by plaintiff.

Ray and Kaufman testified that the six shares are the property of plaintiff and Kaufman jointly, and were issued to Ray, to enable him to act as an arbitrator of any dispute which might arise between them. They asserted that when the corporation was formed it was agreed that plaintiff and Kaufman were each to control a one-half interest, and that the stock was to be equally divided between them or their nominees. In corroboration of this, it was shown by defendants that

the profits of the business had been shared equally, and that each had contributed one-half of the capital.

Ray testified that after endorsing the certificate, he gave the stock book to his stenographer to deliver to Kaufman as secretary of the corporation, to be kept at its offices. The stenographer testified that she delivered the book to Kaufman. Kaufman, Miss Wiley, the bookkeeper of the corporation, and one Harry Cohen, its "controller", asserted that the certificate remained in the stock book until 1938, when Cohen discovered that it was missing. Missing also was a letter dictated by Ray and placed with the certificate, stating that he had no financial interest in the stock, but held it as trustee for Kaufman and plaintiff, each of whom was entitled to three shares, and that it was to be transferred by him at the direction of the two beneficiaries jointly. The contents of this letter were proved by the testimony of Ray, his stenographer, Kaufman, and Cohen, no copies having been found. On one occasion, in 1937 or 1938, Miss Wiley testified, plaintiff's son obtained possession of the stock book, but she said did not examine it before he received it or upon its return to determine whether the certificate and letter were within it. Ray disclaimed any personal interest in the certificate, but stated that he had not delivered it to plaintiff or to anyone representing plaintiff. Cohen stated that in 1939 he discovered that the stock was in plaintiff's possession, and that he and Kaufman consulted Ray, who assured them that plaintiff's possession was unlawful and that no valid transfer to him could have been effected.

Plaintiff's version of the transaction differed materially from that advanced by defendants. In rebuttal he testified that it had been originally agreed that he should have the controlling interest in the corporation and ownership of 51% of the stock. In this he was uncorroborated except for the testimony of his attorney

who stated that on one occasion, in the presence of Kaufman, plaintiff had said that he controlled the corporation. He asserted that he volunteered to have Ray take record ownership of six of his shares merely to qualify him to act as a director, with the understanding that the certificate should be endorsed by Ray in blank and delivered to plaintiff. He denied that Kaufman had any interest in the shares, or that any agreement of trust had been entered into by the parties. The fact that he claimed ownership of 128 shares, more than 51% of the stock, he explained by stating that Kaufman had agreed to give up one-half share in order to permit Ray to hold six. Plaintiff testified that he received the stock book from Ray on September 15, 1933, but that he had Miss Wiley put it in the corporation's vault for safe-keeping, and personally detached the certificate a few weeks later. His statement that it had been in his wife's wall safe from 1933 until it was presented to the corporation for transfer on January 3, 1940, was corroborated by the testimony of Mrs. Leff, his wife.

There can be no doubt, therefore, that a substantial dispute as to plaintiff's title to the certificate existed, and that the corporate defendant had full knowledge of the conflicting claims. Under these circumstances, was the court below justified in sustaining the direction of a verdict for defendants? Plaintiff contends that he was entitled to judgment as a matter of law, or, in the alternative, that the factual issue of ownership should have been submitted to the jury.

As we have frequently held, a writ of mandamus can be invoked to compel the performance of ministerial acts by public and corporate officers only where the relator has a clear, legal right to the performance of such acts and the defendant has a corresponding duty to perform. Where doubt as to the relator's right or the defendant's duty exists, the remedy is neither appropriate nor available: *Homan v. Mackey*, 295 Pa.

82, 86; *Barber v. Wm. H. Horstman Co.*, 295 Pa. 253, 256; *Independent Brewing Co. of Pittsburgh v. Colonial Trust Co.*, 273 Pa. 12, 16-17.

The duty of a corporation to make formal transfers of stock upon its books at the request of a transferee entitled to the shares is well-settled. But it is equally well established that the corporation owes a duty to its stockholders of record to protect them as well as it may from unauthorized and fraudulent transfers. "There is no doubt that a corporation is a trustee of its stockholders, and is bound to proper vigilance and care that they may not be injured by unauthorized transfers of their stock": *Pennsylvania Railroad Co's. App.*, 86 Pa. 80, 83; *Bayard v. The Farmers' and Mechanics' Bank of Phila.*, 52 Pa. 232, 235; *Pennsylvania Co. v. Franklin Fire Ins. Co.*, 181 Pa. 40, 45. The consequences attendant upon failure to protect stockholders from such transfers, where the corporation has notice of conflicting claims are summarized in *Soltz v. Exhibitors' Service Co.*, 334 Pa. 211, 214, where we said: "To aid in performing this duty, the corporation 'may rightfully demand evidence of authority to make a transfer before they permit it to be made. Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes' ". And, in *Livezey v. Northern Pacific R. R.*, 157 Pa. 75, we held that a corporation notified of conflicting claims to stock could not be compelled to act at its peril in resolving them, stating (pp. 85-86): "They had a right to be protected by a judicial decree in an adversary proceeding in which all parties interested should or might intervene, before they could be convicted of a wrongful refusal to transfer, and such a proceeding was never commenced."

In the present case, therefore, the corporation was justified in refusing to transfer the stock to plaintiff's name on its books until the manifest doubts concerning his right to the transfer had been resolved. It could

not deliberately ignore the conflicting claims, nor could it be compelled to assume the risk of their solution.

In support of his motion for judgment n. o. v. plaintiff contends that his bare possession of the certificate, with the genuine endorsement in blank of the registered owner, is sufficient under the Uniform Stock Transfer Act of May 5, 1911, P. L. 126 (15 PS Sec. 301 et seq.), to establish his legal title to the shares, and that the corporation is bound to recognize him as their owner until his title is avoided in another proceeding by the parties in interest. It is true that under section 21 of the Act, the person to whom a stock certificate is specially endorsed is "the person appearing by the certificate to be the owner thereof", but in this instance the certificate was not specially endorsed to plaintiff. Nor is plaintiff aided by section 1, which provides that title to a certificate and the shares which it represents can be transferred only by delivery of the certificate endorsed in blank or specially by the person appearing to be the owner, for here there was no delivery to plaintiff by Ray. Sections 5 and 6, rendering "effectual" unauthorized deliveries by one having no right of possession or authority from the owner, and transfers procured by fraud, both refer specifically to the exceptions set forth in section 7, which provides that the owner may reclaim the certificate under such circumstances, enjoin its further transfer, or have it impounded, unless it "has been transferred to a purchaser for value, in good faith, without notice of any facts making the transfer wrongful", or unless the injured party has waived his rights or been guilty of laches.

The Act does not purport to make bare possession of the certificate, endorsed in blank, legal ownership for all purposes. It does not require the corporation to recognize such possessor as owner regardless of its knowledge of existing equities or claims against his title. While it is true, as we stated in *Mills v. Jacobs,* 333 Pa. 231, 235: "The main purpose of the Uniform Act is to make cer-

tificates of stock *as far as possible* the sole representative of the shares which they represent", (Italics added) it is apparent, from the whole context of the Act, particularly the sections above cited and section 8, and from the comments of the commissioners contained in Volume 6 of Uniform Laws Annotated, that the intent was to protect "bona fide purchasers" of certificates to the same extent that innocent purchasers for value of negotiable paper are protected. See Dewey, Conflicting Claims to Stock, 52 Harv. L. Rev. 553 (1939). Its purpose was not to protect transferees who took the certificates with notice of equities in favor of third persons. See *McAllister v. McAllister Coal Co.,* 121 N. J. Eq. 249, 190 A. 53; *Escat v. Leaman,* 181 So. 621 (La. App.). Nor does it purport to protect a corporation which permits a wrongful transfer of its stock with knowledge of the rights of third persons therein *(West v. American Telephone & Telegraph Co.,* 54 Ohio App. 369, 7 N. E. (2d) 805), or without exercising reasonable diligence to ascertain whether the transfer is authorized. *Seymour v. National Biscuit Co.,* 107 F. (2d) 58, (C. C. A. N. J. 1939), cert. denied, *National Biscuit Co. v. Seymour,* 309 U. S. 665. Thus, in *Soltz v. Exhibitors' Service Co.,* supra, we held that where the corporation had reasonable doubt as to the right of the holder of a certificate, containing a visible erasure of assignment, to have it transferred of record, it was not bound under the Uniform Act to make the transfer at its peril. We said (pp. 215-216) : "The erased assignment was notice to the corporation that the stock had been transferred . . . prior to the purported assignment . . . The corporation had to decide whether the certificate showed probable ownership in one other than [the endorser] or the plaintiff. Defendant is entitled to protection in such contingencies."

Plaintiff contends, however, that the issue of title could and should have been submitted to the jury in this proceeding, and that its verdict would have provided

ample protection to the defendants against adversary claims. The issue of title to the stock was not involved in this action. The only question involved was whether plaintiff had a clear, legal right to the transfer of the certificate, and whether the corporate officers had breached a clear, legal duty. Sufficient evidence was presented to show that a substantial and material dispute existed as to the right of transfer, and, consequently, that the corporation could not be compelled, by a writ of mandamus, to close its eyes to this dispute and register the stock in plaintiff's name. The trial judge was therefore justified in directing a verdict in defendants' favor.

As the court below pointed out, no judgment could have been entered in these proceedings which would have concluded the rights of Ray and the intervening defendant, Kaufman, individually, to the certificate or the shares represented. Under section 9, of the Act of June 8, 1893, P. L. 345 (12 PS sec. 1916), judgment in mandamus proceedings may be entered only for or against the relator and the defendants against whom the writ was issued, although costs and damages may be assessed against an intervenor. Intervention and interpleader are not to be so confused: *Tonkonogy v. Levin,* 106 Pa. Superior Ct. 448. Although Ray disclaimed any personal or pecuniary interest in the certificate, he would be a necessary party to any proceeding to try title to the stock in his capacity as registered owner thereof, and trustee for one or both of the parties claiming beneficial ownership.

Plaintiff misconstrues the effect of our decision in *Soltz v. Exhibitors' Service Co.,* supra, as holding that the issue of title to the stock there in dispute could be decided on mandamus proceedings. That case was before us on an appeal from the action by the court below in sustaining plaintiff's demurrer to the return. We held that the return, setting forth circumstances of notice to the corporation that the holder of the cer-

tificate had doubtful title, was sufficient to constitute a defense to the action if proved, and that the writ should not issue "until the court was satisfied that the corporation was assured of adequate protection against loss." (p. 215.)

There is no merit to plaintiff's contention that the court below was bound to enter judgment in his favor because of laches on the part of Kaufman and Ray in asserting their rights to the certificate. Although he testified that the certificate had been in his possession from 1933 to date, Ray, Kaufman and Cohen asserted that their first knowledge of its absence from the stock book was acquired in 1938, that they believed this would have no effect upon the rights of Ray and Kaufman, and that the certificate was first known to be in plaintiff's possession in 1939. When it is considered that plaintiff made no effort to have the corporation transfer the stock to his name until 1940, it is evident that the court below could not have declared defendants guilty of laches as a matter of law. Their right to reclaim the certificate must be established in another action.

The judgment of the court below is affirmed, appellant to pay the costs of this appeal.