## Gavin v. Philadelphia

*Bernard L. Lemisch* and *Alfred I. Ginsburg*, for plaintiff.

*J. L. Stern*, Deputy City Solicitor, and *David Berger*, City Solicitor, for defendants.

GUERIN, J., October 25, 1960.—This matter comes before us on plaintiff's complaint in equity, in which it is alleged that defendants deliberately, illegally and improperly discriminated against him by denying him promotion from the rank of lieutenant to that of captain in the Philadelphia Police Department under a civil service eligible list established December 28, 1956. . . .

## Discussion

To understand properly the equities presented herein, as well as the illegal and discriminatory conduct that unjustly deprived plaintiff of promotion to the rank of police captain, it is necessary to review the evidence in some detail.

On February 2, 1956, the Personnel Department of the City of Philadelphia announced that a promotional examination for the rank of police captain would shortly be given and that applications to take such examination would be accepted up to and including February 27, 1956, the closing date. Plaintiff applied to take said examination, and took said examination in the early summer of 1956. As a result thereof plaintiff attained a score of 85.10 which entitled him to the rank of no. 18 on said promotional list,

which was published on December 26, 1956. Thereafter, a series of events occurred prior to the expiration of said list on December 26, 1958, all of which illegally and discriminatorily deprived plaintiff of his right to promotion to the rank of police captain, and some of which did not come to his attention until the middle of November 1958, others some time thereafter, and still others at the time of trial.

The first irregularity of record that violated plaintiff's rights under said promotional list occurred when one Earl White, a returning serviceman, was given a special promotional examination which he took by himself, which, according to the testimony of defendants' witness, Foster B. Roser, Personnel Director of the City of Philadelphia, was the same examination given six months earlier to those appearing on the eligible list of December 26, 1956. As a result thereof, Mr. White, attained a rank on the promotional list of eight and one-half, and was appointed police captain on April 22, 1957. We have been unable to find any authority under either the Act of June 25, 1919, P. L. 581, as amended, 53 PS §12621, et seq., or under the Philadelphia Home Rule Charter, for the granting of such a special and separate examination, nor did defendants offer any legal explanation therefor. The effect of the above was to move plaintiff one rank lower on the promotional list than that which he held on the final and published list of December 26, 1956.

Thereafter, promotions were made in accordance with the published rankings until one George Miller, no. 15 on the promotional list, and one Sam Berger, no. 17 on the promotional list, both of whom having been certified twice and being not appointed, were passed over in accordance with Civil Service Regulation 11.05, City of Philadelphia. Subsequently, however, both Miller and Berger were restored to the eligible list and appointed to the rank of police captain.

The practice of the Police Department in regard to men certified twice and rejected twice was explained by Murray Bookbinder, its personnel officer, as follows:

"*My practice* has been in the few cases where men have been passed, which are very few, that at the time a vacancy does occur we combine the request for restoration to the eligible list with the request for certification, in effect, saving extra paperwork steps, which happened in the Miller case." (Italics supplied).

It is clear that authorization for the return of Miller and Berger to the eligible list *was not* from a written request of the appointing officer, the police commissioner, as provided under Civil Service Regulation 11.05, but rather from his personnel officer, whose "practice" was as indicated above. It is to be noted that said automatic restoration to the eligible list was not done in plaintiff's case.

Plaintiff was first certified for appointment on October 7, 1958, along with Berger, no. 17, and Berger was appointed; on October 28, 1958, plaintiff was certified along with Miller, no. 15, who had been restored to the eligible list after being twice rejected for appointment, and Miller was appointed. On neither occasion was plaintiff notified of his certification as legally required under Civil Service Regulation 11.07, City of Philadelphia, nor on either occasion was he interviewed by the appointing authority or any other responsible person as legally required under Civil Service Regulation 11.091, City of Philadelphia. It was not until November 13, 1958, when plaintiff learned that two fellow officers were to be appointed captains, that he became aware that he was being passed over. Immediately thereafter, in the company of James J. Loughran, then president of the Fraternal Order of Police, plaintiff visited the office of the Police Commissioner, Thomas J. Gibbons, and was informed that he would be appointed within 10 days to the rank

of police captain, which appointment was never made. On December 26, 1958, the eligible list expired and plaintiff's right to promotion thereunder was at an end.

Defendants advance five arguments in support of their conduct herein and the legality thereof, namely: First, that plaintiff's relief is at law in mandamus and not in equity; secondly, that plaintiff is barred by laches; thirdly, that the civil service regulations which permit an appointing authority to pass over a candidate for promotion on an eligible list are lawful and valid; fourthly, that there was no violation of plaintiff's fundamental rights and consequently this court should not intervene in the administrative function involved; and lastly, that the equities in this case favor the police department and the public rather than plaintiff.

Defendants first argue that plaintiff's relief is at law in mandamus and not in equity. With this we do not agree. The purpose of mandamus is to enforce a right already established, not to inquire and investigate. As this matter was presented, and the above argument was made in preliminary objections, it was clear that plaintiff's rights, if any, were indeed doubtful, and about which there was a substantial dispute. As was stated in Leff v. N. Kaufman's, Inc., 342 Pa. 342, at pages 346-47:

"As we have frequently held, a writ of mandamus can be invoked to compel the performance of ministerial acts by public and corporate officers only where the relator has a clear, legal right to the performance of such acts and the defendant has a corresponding duty to perform. Where doubt as to the relator's right or the defendant's duty exists, the remedy is neither appropriate nor available." (cases cited). No clear legal right having existed in plaintiff, mandamus was properly refused and the matter heard in equity.

Defendants' second contention, that plaintiff was guilty of laches in not instituting suit at an earlier date, is clearly without support under the facts and evidence. Although it is true that plaintiff first became suspicious that he had a grievance on November 14, 1958, it was not until sometime thereafter that he learned that defendants had not followed Civil Service Regulations Nos. 11.07 and 11.091 in processing his certification. Finally, it was not until sometime after December 26, 1958, when the list on which he was no. 17 expired, that he became fully aware that his rights had been violated, and not until trial did he learn the degree and manner of such violation.

We think it is, to express it mildly, manifestly unfair for defendants to raise the question of laches where plaintiff was unaware that his rights were being swept away through the failure of defendants, on two occasions, to follow the prescribed regulation that a successful applicant be notified of his certification, and in twice failing to interview him as required after he had been referred to the appointing authority. Further, we think it inexcusable that defendants had not developed within the police department a timely and orderly program of appeal or review for aggrieved employes. It is to be noted that section 7-401(t), Philadelphia Home Rule Charter, specifically provides that the regulations shall provide for

"The development and operation of programs to improve the work effectiveness and morale of employees of the City, including safety, health, welfare, recreation, training and education and labor relations, *including grievances and hearings* thereon." Here a qualified and conscientious city employee had indeed a grievance but, unfortunately, no tribunal in which to seek a hearing but a court of equity. (Italics supplied.)

In the light of the foregoing there is absolutely no

basis for defendants' assertion that plaintiff was guilty of inexcusable delay in proceeding against defendants; considering the attendant facts and circumstances, to deny plaintiff's claim would be grievous error as well as a grave injustice. As the court wrote in Grote Trust, 390 Pa. 261, at pages 269-70:

"Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him."

Justice and equity render inapplicable the doctrine of laches herein. Both public policy and the common rules of fair play demand the protection of loyal, honest, competent, and conscientious public servants such as plaintiff.

Defendants' third, fourth and fifth arguments are completely without merit and can be disposed of as one. In the first place, it was clear that appointments, particularly as to plantiff, were not made on merit since plaintiff was never interviewed when certified as provided under Civil Service Regulation 11.091. Thomas J. Gibbons, the then police commissioner, testified that he did not come to know plaintiff until he complained that he was being discriminated against. Thereafter the police commissioner for the first time looked into plaintiff's record and was informed by Deputy Commissioner Leary that plaintiff had a good department record; that there was nothing against him. To the contrary, however, the police commissioner did know personally Berger who was certified with plaintiff and appointed; did know Miller who was certified with plaintiff and appointed; and did know personally Brown and McCloskey who were certified and appointed immediately after plaintiff had been twice rejected. It should be here noted once again, and as was indicated supra, that under the established

procedures of the police department, plaintiff should have been automatically recertified and considered for appointment along with Brown and McCloskey. However, though this was done in the cases of Captains Miller and Berger, it was not done in the case of plaintiff. Further, Captains Berger, Brown and McCloskey were appointed because they were specifically requested by Deputy Commissioner Leary; it was clear that once this request reached the appointing officer, no other candidate was considered. In the case of Brown and McCloskey, they were requested ostensibly because of their experience in the detective division, although for some two months after his appointment, Captain Brown was assigned to the sixth police district and not to the detective division.

It was clear from the testimony presented, and particularly the testimony of defendants' witnesses, that friends and influence were of prime importance in promotional appointments. A glaring example that this was so is found in the testimony of Foster B. Roser, Personnel Director of the City of Philadelphia, who testified as follows:

"Q. What does a man require as far as qualifications to get such appointment when he takes such examination, passes the examination with a fairly substantial mark, and has a good record in the police department? What other qualification does he require before he gets an appointment?" "A. Well, I suppose if the police commissioner were going to appoint someone from the eligible list he would to some extent assure himself this man has been a satisfactory employee, has some promotional potential, is a person who has been able to get along with his co-workers and *certainly is in the police commissioner's favor.*" (Italics supplied.)

In the light of the above facts, about which there is no dispute, we hold that plaintiff was illegally and discriminatorily denied appointment to the rank of police

captain as of November 14, 1958, and from that date he is entitled to recover for loss of compensation at the rate of $1,000 per year, as well as to have all the other rights and privileges pertaining to said office. . . .

## Decree Nisi

And now, October 25, 1960, it is ordered, adjudged and decreed that plaintiff, Thomas V. Gavin, be appointed forthwith to the rank of police captain in the Police Department of the City of Philadelphia as of November 14, 1958, with all the rights, privileges and emoluments pertaining to said office as of the aforementioned date; and further, that defendants reimburse plaintiff in the sum of $1,000 per year from November 14, 1958, as compensation for loss of earnings resulting from the illegal and discriminatory conduct of the appointing authority, the Police Commissioner of the City of Philadelphia, in denying plaintiff said appointment to the rank of police captain.

3. Defendants shall pay the costs. . . .

## Opinion Sur Exceptions to Adjudication

Per Curiam, November 9, 1960.—Defendants' exceptions to the adjudication of the trial judge were argued before the court in banc, and after careful study and consideration thereof, we are of the opinion that the adjudication properly determines the issues involved. . . .

Defendants argue that their exceptions relate principally to the two following basic conclusions of the trial judge: "(1) That the Police Commissioner did not act in good faith in making promotions and (2) that there was discrimination against the plaintiff."

First, nowhere in the trial judge's adjudication did he rule that the police commissioner did not act in good faith; secondly, the good or bad faith of the police commissioner is of no import to the trial judge's finding that plaintiff was illegally and discriminatorily de-

prived of promotion. Whether the illegal and discriminatory conduct of the police commissioner was due to ignorance, inadvertence, or design is not of paramount importance. The basic and fundamental fact is, that plaintiff was *never notified, interviewed, or considered for appointment*, as legally required. Defendants admit there was no notification and there was no interview; further, the police commissioner testified that he did not know plaintiff, that he only went over his record and made inquiries after plaintiff complained. Obviously no other conclusion was possible but that the police commissioner had never considered plaintiff for promotion, notwithstanding the fact that his name had been twice submitted for promotion to captain. . . .

Defendants' exceptions to the trial judge's refusal to grant their request for conclusion of law number 4 is dismissed for the reason that there is absolutely no logical, factual, or legal support for said request. Defendants argue that Civil Service Regulations no. 11.07 and 11.091 are directory rather than mandatory. It is difficult to understand the reasoning behind such an argument when the Act of June 25, 1919, P. L. 581, art. XIX, sec. 13, as amended by the Act of April 12, 1935, P. L. 25, sec. 1, 53 PS §12633, clearly provides that: "The Commission *shall* adopt, amend, and enforce rules for the classified service, *which shall have the force and effect of law.*" (Italics supplied.) See also Niblo v. City of Philadelphia, 18 D. & C. 79. Further, a reading of these two regulations leaves no doubt that notification of certification and interviewing the referred eligibles was mandatory. Civil Service Regulation 11.07 specfically provides that "Eligibles to be certified *shall be notified* . . .," and Civil Service Regulation 11.091 that "All eligibles referred to an appointing authority *shall be interviewed* by him, or some other responsible person designated by him." (Italics supplied.)

It is our opinion that the trial judge's adjudication clearly, adequately and properly disposes of all the factual and legal issues presented herein, and that no error has been committed. For the reasons so ably stated by the trial judge in his adjudication, as well as for the reasons indicated herein, we adopt the trial judge's adjudication as the opinion of the court en banc.

The exceptions of defendants are dismissed.

A final decree, in the form of the decree nisi, will be entered by the prothonotary.