**STERLING BOX COMPANY, a Pennsyl-vania Corporation, Plaintiff,**

v.

**Lillian TOURETZ, Executrix of the Es-tate of Philip Stetsky, Defendant.**

**Civ. A. No. 83–2385.**

United States District Court,
W.D. Pennsylvania.

May 7, 1984.

Ronald S. Krasnow, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Paul H. Titus, Titus, Marcus & Shapira, Pittsburgh, Pa., for defendant.

## OPINION

COHILL, District Judge.

Presently before us is Defendant's Motion to Dismiss, or in the alternative, for Change of Venue, filed pursuant to Fed.R. Civ.P. 12(b)(1) and (2) and 28 U.S.C. § 1404, in which the defendant asserts that this court lacks jurisdiction over the instant action.

This lawsuit involves a stock option contract executed in 1957 between the decedent, Philip Stetsky (a New York resident) and Morris Ruskin, then president of Sterling Box Company (a Pennsylvania corporation). The contract provided that the plaintiff would employ Mr. Stetsky for three years, then year to year, on a fixed salary, and that if Mr. Stetsky were continually employed by the plaintiff until his death, the plaintiff had the right to purchase his 75 shares of Sterling Box Company stock for $7,500.00.

On May 22, 1983, Mr. Stetsky died leaving a will which devised the 75 shares of stock to his daughter.[1]

On June 9, 1983, the plaintiff exercised its option to purchase Mr. Stetsky's shares in accordance with the terms of the 1957 agreement. The defendant, as executrix of Mr. Stetsky's estate, has refused to transfer the shares. Therefore, the plaintiff filed this complaint, on the basis of diversity jurisdiction, in which it seeks a declaratory judgment as to the enforceability of the contract and specific performance of the agreement.

The defendant now asks that we dismiss the plaintiff's complaint on the grounds that we do not have personal jurisdiction over the decedent, nor do we have quasi-in-rem jurisdiction over the shares of stock.

■ At the outset, we must note that a federal court has jurisdiction over a diversi-

---

1. The will is currently in probate in the Surrogate Court of the State of New York. The share certificate representing the 75 shares of stock is also located in New York.

ty case if a court in the state in which the federal court sits would have such jurisdiction. *Thermothrift Industries, Inc. v. Monotherm Insulation Systems, Inc.,* 450 F.Supp. 398, 402 (W.D.Ky.1978). Thus, we must look to Pennsylvania law to see if we have jurisdiction over this action.

The starting point for determining whether we have quasi-in-rem jurisdiction over diversity actions involving corporate shares is 42 Pa.C.S.A. § 5305 which provides in pertinent part:

The tribunals of this Commonwealth shall have jurisdiction, whether or not the persons owning or claiming interests in the shares or share certificates are subject to the jurisdiction of the tribunals of this Commonwealth:

(1) Over shares in a corporation incorporated under the laws of this Commonwealth (subject to the limitations of Title 13 (relating to Commercial Code)).

(2) Over share certificates which are located within this Commonwealth.

The first sentence of § 5305 states that this statute applies to situations where the purported owner of the shares is not subject to personal jurisdiction. Even if a Pennsylvania court does not have jurisdiction over the owner, it will have quasi-in-rem jurisdiction over the action so long as the shares at issue are from a Pennsylvania corporation (subsection (1)), or the share certificate is located within the Commonwealth (subsection (2)).

In the case *sub judice*, the plaintiff contends that subsection (1) of this statute is applicable and gives us jurisdiction since the 75 shares at issue are shares of Sterling Box Company, "a corporation incorporated under the laws of this Commonwealth." 42 Pa.C.S.A. § 5305(1). Thus, it is the plaintiff's contention that, even if the decedent were a New York resident and the stock certificate is in New York, we have jurisdiction since Sterling Box Company is a Pennsylvania corporation. The defendant argues, however, that 5305(1) does not give us jurisdiction since the parenthetical phrase, "(subject to the limitations of Title 13 (relating to Commercial Code)),"

places strict limitations of the applicability of subsection (1). It is the defendant's contention that Title 13 requires the share certificate to be in Pennsylvania before a Pennsylvania court can obtain jurisdiction pursuant to (1).

Title 13 of the Commercial Code is embodied in 13 Pa.C.S.A. § 8101, *et seq.* This statute adopts the provisions of the repealed Uniform Stock Transfer Act of 1911 which defined, *inter alia,* the legal situs of a share certificate. The limitations imposed by the Uniform Stock Transfer Act have been addressed by few courts. Though these decisions are rare and fairly old, they still remain as precedent in this area of the law and will aid us in our construction of 42 Pa.C.S.A. § 5305(1).

The first Pennsylvania case to consider jurisdiction in a stock certificate case was *Mills v. Jacobs,* 333 Pa. 231, 4 A.2d 152 (1939). In *Mills,* four stock certificates from foreign corporations (one certificate from a Virginia corporation and three from a Delaware corporation) were attached in Pennsylvania as collateral for an unpaid note. The Pennsylvania Supreme Court considered whether or not these shares, represented by the stock certificate, could be the subject of an attachment in Pennsylvania.

In making that decision, the court first had to look to the law of the state of incorporation to determine whether or not the certificate embodied the shares. The court looked to the Uniform Stock Transfer Act and concluded that, in Pennsylvania, (and Virginia which also adopted the uniform act) the share certificate does embody the stocks. "The main purpose of the uniform act is to make the certificates of stock *as far as possible* the sole representatives of the shares which they represent." (Emphasis supplied.) *Mills,* 4 A.2d at 154.

The court, in applying the uniform act to the facts, concluded:

'... since the adoption of the Uniform Stock Transfer Act by our Legislature the situs of corporate stock, *for the purpose of attachment and levy,* has fol-

lowed the certificate and is now where the certificate is found.'

(Emphasis supplied.) *Id., citing, Elgart v. Mintz*, 123 N.J.Eq. 404, 197 A. 747 (1938). Thus, only share certificates located within Pennsylvania can be subject to attachment proceedings in this state.

In 1953, the Pennsylvania Supreme Court again addressed this issue in *Crane v. Crane*, 373 Pa. 1, 95 A.2d 199 (1953). In *Crane*, the court stated the purpose of the Uniform Stock Transfer Act and its limitations.

> It was generally held in most jurisdictions prior to the enactment of the Uniform Stock Transfer Act that shares of stock should be considered as located at the domicile of the state of incorporation of the company, the certificate being merely evidence of the fact of ownership of the shares and not itself constituting attachable property, see cases cited 122 A.L.R. 340, 358. What the Uniform Stock Transfer Act (in Pennsylvania, the Act of May 5, 1911, P.I. 126, 15 P.S. § 301 et seq.) aimed to remedy was the possibility that where shares of stock were attached in the state of incorporation the certificate evidencing the ownership of such shares might be transferred in another jurisdiction to a purchaser for value and without notice of the attachment. *Leff v. N. Kaufman's Inc.*, 342 Pa. 342, 348, 349, 20 A.2d 786, 790, 139 A.L.R. 267. Accordingly it was provided, section 13, that no attachment or levy upon shares of stock for which a certificate was outstanding should be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined.

*Crane*, 95 A.2d at 201.

The plaintiff in *Crane* was not seeking to have stocks attached, but was asking that the corporation be enjoined from paying dividends until her husband's liability for her support was decided.

The *Crane* court recognized that this situation was different from that in *Mills*,

and that merely enjoining the payment of dividends until the issuance of a court decree as to support liability would not affect the purpose of the Act. Thus, the Uniform Stock Transfer Act would be inapplicable. More specifically the court held, as to the uniform act:

> [It] has not changed the actual situs of the shares nor deprived the courts of this state from exercising jurisdiction over stock in a Pennsylvania corporation owned by nonresidents ... What it has done is to make the certificate also a res for the purpose of attachment and levy; thus, in *Mills v. Jacobs*, 333 Pa. 231, 4 A.2d 152, 122 A.L.R. 333, it was held that, where the state of incorporation has adopted the Uniform Stock Transfer Act, the certificates of stock of a corporation of that state might be the subject of attachment execution in our own state.

(Citations omitted.) *Id.*

Through the *Crane* decision, it was recognized by the Pennsylvania Supreme Court that the Uniform Stock Transfer Act does not *always* require the stock certificate to be within the Commonwealth before a Pennsylvania court can assume jurisdiction.

The most recent case to address this issue is *Lesavoy Industries v. Pennsylvania General Paper Corp.*, 404 Pa. 161, 171 A.2d 148 (1961).

In *Lesavoy*, the plaintiff asked the court to declare null and void the transfer of shares of a Pennsylvania corporation to a New York resident, and that the Pennsylvania corporation be ordered to reassign and retransfer the shares of stock to plaintiff. In seeking this relief, the court was confronted with a question as to service of process. Since the New York resident was not within the Pennsylvania court's jurisdiction, the plaintiff sought extra-territorial service pursuant to Pa.R.C.P. 1504(b). This rule permits service if the subject matter is within the court's jurisdiction.

In applying the Uniform Stock Transfer Act, the *Lesavoy* court held that the situs of the stock is the location of the certificate

and since the certificate was in New York, Pennsylvania courts lacked jurisdiction. The court also recognized the *Crane* decision.

> "In *Crane v. Crane* ...., this court did not consider the situs of stock to be that of the corporation and permitted an action against the corporation to transfer shares on its books. However, such actions will be permitted only where the outstanding certificates are either seized, surrendered or their transfer enjoined ... *unless it is unnecessary to enjoin transfer...*"

(Emphasis supplied.) *Lesavoy*, 171 A.2d at 151.

In reviewing this trilogy of cases, we are of the impression that the Uniform Stock Transfer Act (now embodied in the Uniform Commercial Code) required the situs of the shares to be the location of the certificate and that only the courts within that location had jurisdiction when the situation required protection of bona fide purchasers. *See Leff v. Kaufman's, Inc.,* 342 Pa. 342, 20 A.2d 786 (1941). Thus, actions seeking attachment, levy or retransfer required the stock certificate to be within the court's jurisdiction so that the court would have authority to seize the stock and protect innocent purchasers. The Act did not intend that, in all situations, the situs of stock be the situs of jurisdiction. As stated by the *Mills* court, this was to be done "as far as possible." *Mills v. Jacobs,* 4 A.2d at 154.

█ We must conclude, therefore, that the situs of stock dictates jurisdiction only in cases where bona fide purchasers must be protected.

Further support of this conclusion is found in the Official Source Note following 42 Pa.C.S.A. § 5305. This note states, "[p]atterned after Mich.S.A. 27A.765." Section 765(1) [M.C.L.A. § 600.765(1)] of the Michigan statutes includes basically the same parenthetical phrase as § 5305(1). Jurisdiction over stock in a Michigan corporation is limited by the Uniform Stock

Transfer Act (now incorporated in the Michigan Commercial Code.) The Practice Commentary, following the statute, states, "[t]herefore, *the limitation on attachment* of shares in a domestic corporation ... still prevails under RJA [Revised Judicature Act] § 765(1) ..." (Emphasis supplied.) Hence, the Michigan state statute, upon which the Pa. statute is patterned, specifically provides that jurisdiction over shares of a state corporation is only limited by the Uniform Stock Transfer Act in cases of attachment.

█ In construing 42 Pa.C.S.A. § 5305, we must also note the interplay between subsections (1) and (2).[2] Subsection (1) gives Pennsylvania courts jurisdiction over shares in a Pennsylvania corporation, while subsection (2) provides for jurisdiction "[o]ver share certificates which are located within this Commonwealth." If we were to construe the parenthetical phrase in subsection (1) as requiring the stock certificate to be within the jurisdiction, there would be no reason for subsection (2). General statutory construction principles provide that a court must construe a statute so as to give effect to every section. *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979). We must look to the entire statute, even if we are only construing a small portion. *In Interest of Jones,* 286 Pa.Super. 574, 429 A.2d 671 (1981). In so doing, a statute must not be construed in such a way as to render a provision meaningless. *Adamowski v. Bard,* 193 F.2d 578 (3d Cir.1952), *cert. denied,* 343 U.S. 906, 72 S.Ct. 634, 96 L.Ed. 1324 (1952).

If we were to accept the defendant's interpretation of § 5305(1), we would render § 5305(2) meaningless.

█ In applying the case trilogy and principles of statutory construction to the case at hand, we find that we have jurisdiction over this action. The plaintiff is merely seeking a declaratory judgment as to the validity of the stock option contract. We are not concerned with an attachment or a

---

**2.** See p. 1232, *supra.*

levy. Interests of an innocent third party are not at stake. Only the decedent's daughter stands to lose, and she is aware of the 1957 contract. Since the shares at issue are shares of a corporation incorporated within the Commonwealth of Pennsylvania, and since the limitations of 13 Pa.C.S.A. § 8101, *et seq.* are not applicable, we have jurisdiction pursuant to 42 Pa.C.S.A. § 5305(1).

■ Though we have held that we have quasi-in-rem jurisdiction over this action, we still must meet the "minimum contacts" requirement dictated by the Due Process Clause of the United States Constitution. 42 Pa.C.S.A. § 5308. *See, International Shoe Co. v. State of Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). Specifically, the Due Process Clause allows a court to obtain jurisdiction over a non-resident or property in which a non-resident has an interest if the defendant had sufficient contact with the forum state so as to not offend the "traditional notions of fair play and substantial justice. *Id.* at 320, 66 S.Ct. at 160. *See also, Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977).

In the case at bar, the defendant claims that the decedent did not have any contacts with Pennsylvania. In support of this argument, the defendant filed affidavits of Martin L. Conrad and Gladys Bernstein. The plaintiff countered these affidavits with an affidavit of Stanley Ruskin, the current president of Sterling Box Company. In that affidavit, Mr. Ruskin states that the entire 1957 contract was negotiated and executed in Pennsylvania, and that Mr. Stetsky visited family in Pennsylvania and also visited the plaintiff's headquarters and signed corporate documents here. A supplemental affidavit of Mr. Ruskin was also filed by the plaintiff in which Mr. Ruskin stated that the decedent became a director of Sterling Box Company in 1976 and signed minutes of the board meetings. The March 1, 1982 board minutes reflect a formal election of the decedent. (*See* Supplemental Aff. of Ruskin, ¶ 4.)

■ Since this is a Motion to Dismiss, we must view the pleadings in the light most favorable to the non-moving party and the allegations are considered to be true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). *See also Hochman v. Board of Education of Newark,* 534 F.2d 1094 (3d Cir.1976). Thus, in viewing Mr. Ruskin's affidavit in a favorable light, we believe that the decedent's contacts with Pennsylvania, especially his participation as a director of a Pennsylvania corporation, were sufficient minimum contacts so as to satisfy the Due Process Clause.

The defendant has also asked for a change of venue. This will also be denied.

■ A plaintiff's choice of forum should not be disturbed unless the defendant can show that such forum would cause oppressive inconveniences. *Austin v. Johns-Mansville,* 524 F.Supp. 1166, 1169 (E.D.Pa.1981). This is a heavy burden on the defendant, and the balance of interests must weigh strongly in defendant's favor. *Gulf Oil v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1977).

The defendant cannot meet this difficult burden.

■ The 1957 contract was negotiated and executed in Pennsylvania. The company's files and documents relating to the agreement are here. It is true that Martin Conrad, one of defendant's key witnesses, is a resident of New York and not subject to service of process by this court. However, this poses no real problem. From all we have seen, Mr. Conrad is a friendly witness for the defendant and would not have to be ordered to appear. We also note that the defendant may have some documents relating to this case in New York. This, however, does not persuade us to grant a change of venue. We believe both parties have documents to use for trial, and if plaintiff's documents are in the forum state, transfer is not warranted. *AMF Incorporated v. Computer Automation,* 532 F.Supp. 1335, 1340 (S.D.Ohio 1982).

Since the defendant has not met her burden, we must deny her motion for change of venue.