# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## Chestnut Hill and Spring House Turnpike Road Company *v.* Montgomery County, Appellant.

*Statutes—Construction —Reasonable meaning—Rules of grammar.*

1. In construing a statute effort should be made to find a reasonable meaning for all of the words used and to give force and effect to every part. The construction placed upon each part should be logical in itself, and consistent with that given to every other.

2. All phrases and sentences are to be construed according to the rules of grammar; and these require, as a general thing, that a limiting clause or phrase following several expressions to which it might be applicable, should be restrained to the last antecedent.

*Turnpike companies—Condemnation of road—Practice, C. P.—Practice, Q. S.—Jury of view—Confirmation of report—Appeals—Act of June 2, 1887, P. L. 306—Construction of act.*

3. Sections 6 and 8 of the Act of June 2, 1887, P. L. 306, relating to proceedings for condemning a turnpike road are thus construed: (1) Exceptions may be filed within thirty days from the time the report is filed; (2) if the exceptions filed are withdrawn or dismissed, and the report is not referred back to the jury or set aside, then it is to be marked confirmed nisi, which is equivalent to the approval referred to in sec. 8; (3) another thirty days is then given to allow time for an appeal to the common pleas, and if no appeal is taken within that period, the report is to be finally confirmed or disapproved at the end thereof; (4) if an appeal is taken, then the final confirmation cannot take place until thirty days after the result of the appeal is remitted

from the common pleas and filed in the quarter sessions; (5) if no exceptions are filed or appeal taken to the common pleas within the times fixed by the act, the court may of its own motion confirm or dismiss the report.

*Turnpike companies—Condemnation proceedings—Damages—Evidence.*

4. On a proceeding to condemn a turnpike road evidence as to the quality and value of the masonry in a bridge along the line of the road is admissible, although there are dates indicating the erection of the bridge prior to the chartering of the company, if there is evidence to show that the bridge was rebuilt in comparatively recent times, and that the company had been in possession of the property along the line of the road for nearly a century.

5. In such a proceeding evidence as to a private sale of the stock of the company is not to be regarded as conclusive or binding evidence of market value, but only as some evidence which the jury may consider in determining the question.

6. In ascertaining the value of the road condemned the jury may take into consideration the value of the cuts and fills shown by experts to exist in the road, and, to ascertain this, they may consider the words used in the ancient books of the company, such as "leveling, forming, and smoothing," as indicating the doing of such work.

7. The value of the franchises of a turnpike road company depends to a degree upon the earning capacity of the company; but whether or not it "largely" depends upon this element is for the jury to say under all the evidence in the case.

*Practice, C. P.—Trial—Misstatements of facts.*

8. Alleged misstatements of fact in a charge will not be considered by the appellate court if they were not specially called to the attention of the trial judge; this is especially so where such misstatements are not material.

*Appeals—Assignments of error—Admission of testimony —Rule 29.*

9. An assignment of error to the admission of testimony will not be considered if such an assignment refers to more than one bill of exceptions, and thus violates rule 29.

Argued Feb. 7, 1910. Appeal, No. 62, Jan. T., 1909, by defendant, from judgment of C. P. Chester Co., Jan. T., 1909, No. 9, on verdict for plaintiff in case of Chestnut Hill and Spring House Turnpike Road Company v. Montgomery County. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Petition for the appointment of viewers to condemn a turnpike road. Before HEMPHILL, P. J.

From the record it appeared that the proceedings were originally started in the court of quarter sessions in Montgomery county, June Term, 1907, No. 39, and that the venue was subsequently changed to Chester county where the trial was had.

At the trial the court permitted Malcolm D. Patterson, a witness for plaintiff, to testify under objection and exception as to the quantity and value of the masonry in certain bridges. [3]

The court also permitted Hugh Crilley, a witness for plaintiff, to testify as to the buying and selling value of the stock of the company since 1901 [4], including three bills of exceptions.

The same witness and other witnesses were permitted under objection and exception to testify as to the grading and excavation of the highway and the value thereof. [6, 7, 8, 9]

The defendant presented, inter alia, the following point:

2. That the value of the property to the plaintiff company, the Chestnut Hill and Spring House Turnpike Company, is to be ascertained by the value of the structure considered in connection with the value of its franchises, and the value of its franchises depends largely upon its earning capacity or productiveness. *Answer:* That is affirmed with the qualification that whether the value of its franchises depends largely upon its earning capacity or productiveness—is for the jury to determine. [17]

Verdict and judgment for plaintiff for $61,000. Defendant appealed.

*Errors assigned* among others were (1) refusal of C. P. Montgomery county to strike off the appeal; (2) refusal of C. P. Chester county to strike off the same appeal when moved to do so at the trial; (3–9) rulings on evidence, quoting the bill of exceptions; and (17) refusal of defendant's point as above, quoting point and answer.

*John Faber Miller* and *J. P. Hale Jenkins*, with them *John J. Gheen* and *Conrad S. Sheive*, for appellant.—The appeal

ought to have been filed within thirty days after November 18, 1907.

It is too late after the quarter sessions has entered the decree of final confirmation to take such an appeal.

By "market value" is meant a price established by public sales in the way of ordinary business: Murray v. Stanton, 99 Mass. 345; Meixell v. Kirkpatrick, 6 Pac. Repr. 241; Kountz v. Kirkpatrick, 72 Pa. 376.

It may well be doubted whether under any circumstances the company is entitled to have the expenses of excavations considered by the jury in making up its estimate of damages: Kensington & Oxford Turnpike Co., 97 Pa. 260.

*N. H. Larzelere* and *A. M. Holding*, for appellee.—The filing could at most be no more than an interlocutory decree. Appeals are not allowed from such: Yost v. Davison, 5 Pa. Superior Ct. 469; Irwin's App., 7 Pa. Superior Ct. 354; Guffey's App., 7 Pa. Superior Ct. 478.

When sec. 8 refers to an "approval of the report," it must refer to the actual confirmation and not to the interlocutory order which is made at the time of filing, confirming the report nisi.

There was no evidence whatever as to when the bridge mentioned was constructed. There was evidence that upon some part of it was a mark, stating it to have been built in 1792, and rebuilt in 1886, but this surely furnished no evidence that it was originally constructed as it now exists, prior to the incorporation of plaintiff.

The fourth assignment is in violation of rule 29, as it contains three objections and exceptions and it is problematical which one is relied upon.

Market value by public sales is not the only way to ascertain just compensation for condemned property. Stocks of many kinds occasionally are bought and sold privately, and neither at public auction or at the public stock boards. To say that no proof is admissible of the price and value of such stocks would, in any case trying, where proof of their value was necessary, be equivalent to saying they had no value, and hence

no damage could be suffered. No authority sustains such a conclusion, or establishes such a rule: Murray v. Stanton, 99 Mass. 345.

OPINION BY MR. JUSTICE MOSCHZISKER, April 18, 1910:

The proceedings in this case are under the Act of June 2, 1887, P. L. 306, for the purpose of condemning a turnpike road. The jury of view in the quarter sessions assessed the damages at $23,870. The plaintiff appealed to the common pleas; in which court a jury trial was had, a verdict rendered, and judgment entered thereon for the sum of $61,000. The defendant has taken an appeal from that judgment.

The report of the jury of view was filed on November 18, 1907, and the words "confirmed nisi" appear thereon as of that date, but the court below held that this indorsement was without its authority and was not to be considered as in any sense a confirmation or approval of the report. On December 17, 1907, exceptions were filed. On February 7, 1908, the exceptions were withdrawn. On February 10, 1908, the report was marked "confirmed absolutely," and on February 11, 1908, the appeal was taken to the common pleas. The defendant contends that the appeal was too late and should have been stricken off.

The sixth section of the act provides: "Exceptions may be filed . . . . to the report of such jury of view, within thirty days from the time that such report is filed, . . . . and such court, after considering such exceptions, may refer the report back to the jury : . . . . or may set the same aside, or may confirm such report, and if no exceptions are filed to any such report, unless appeal is taken as provided for in sec. 8 of this act (and in such case the final confirmation of the proceedings shall await the result of the appeal from the assessment within thirty days from the time of filing thereof), then such report shall be confirmed or dismissed by the court." Section 8 provides: "An appeal to the common pleas, . . . . for the assessment of damages, may be taken . . . . within thirty days after the approval of the report."

In construing an act of assembly the pertinent rules of in-

terpretation should be kept in mind, and the effort should be to find a reasonable meaning for all of the words used, and to give force and effect to every part; the construction placed upon each part should be logical in itself and consistent with that given to every other. It is an elementary principle of interpretation that all phrases and sentences are to be construed according to the rules of grammar; and these "require as a general thing, a limiting clause or phrase, following several expressions to which it might be applicable, to be restrained to the last antecedent:" Endlich on Interpretation of Statutes, secs. 2 and 414. Under this rule, and on other considerations which we will point out, we construe the phrase "filing thereof," within the parentheses in the sixth section, as referring to the filing in the quarter sessions of "the result of the appeal from the assessment," when it is remitted from the common pleas. The word "confirm" where it first occurs in the sixth section we take to mean a confirmation nisi or "approval," to await the running of the other thirty days given by sec. 8 in which to take an appeal; and the word "approval" as used in the eighth section we consider to be synonymous with this word "confirm" in the sixth section. It is the evident intention of the act that the verdict in the common pleas shall be advisory to the quarter sessions on the amount of the damages, and that after the result of the appeal is filed in the quarter sessions it is for that court to determine whether or not it will give its final confirmation. This is made plain when we again look at the eighth section, wherein it is provided that the "judgment entered on the verdict, and the record thereof shall be remitted to the proper court of quarter sessions for further action upon the whole case." When the quarter sessions puts its first approval upon the report, it indicates that the court is satisfied with the amount of damages awarded, and that at the end of the next thirty days, if no appeal is taken in the meantime, the report will be confirmed finally. But this approval is not any indication that the report will be so confirmed if the verdict rendered on the appeal should materially alter the situation. It is to cover this latter contingency that the whole matter is tied up

"within" or during the thirty days immediately following the filing of the result of the appeal in the quarter sessions. The giving of this thirty days is consistent with the time allowed by the act for the various other steps in the proceedings, and affords a proper opportunity for all interested parties to gain knowledge of the result of the appeal, and to attack or uphold the verdict before the quarter sessions.

In brief, our construction of the parts quoted from the two sections is: 1. Exceptions may be filed within thirty days from the time the report is filed. 2. If the exceptions filed are withdrawn or dismissed, and the report is not referred back to the jury or set aside, then it is to be marked "confirmed nisi," which is equivalent to the approval referred to in sec. 8. 3. Another thirty days is then given to allow time for an appeal to the common pleas, and if no appeal is taken within that period, the report is to be finally confirmed or disapproved at the end thereof. 4. If an appeal is taken, then the final confirmation cannot take place until thirty days after the result of the appeal is remitted from the common pleas and filed in the quarter sessions. 5. If no exceptions are filed or appeal taken to the common pleas within the times fixed by the act, the court may of its own motion confirm or dismiss the report.

Although the quarter sessions marked the report of the jury of view "confirmed absolutely" on February 10, 1908, the proceedings were not then ripe for final confirmation, and the indorsement can only be taken to be the "approval" required by the act as a preliminary to the appeal to the common pleas. As such appeal was entered the next day, it follows that there is no merit in the contention that it was not within the time fixed by the act.

Complaint is made that the trial judge fell into error in admitting the testimony as to the quality and value of the masonry in a certain bridge along the line of the condemned road. The defendant contends that this bridge was not shown to be the property of the plaintiff company. Although marked with dates indicating its erection prior to the chartering of the turnpike company, there was evidence to show that the bridge was rebuilt in 1886; considering this evidence and the presumption

that exists after a long lapse of time—in this case, nearly a century—that such property along the line of the road belongs to the turnpike company, we see no error in the admission of the testimony in question.

Testimony of the price paid at private sale in 1901 for a large block of stock of the plaintiff company was admitted for the purpose of showing the value of such stock. The specification of error which goes to the admission of this testimony cannot be considered, as it plainly violates rule 29 of this court by referring to more than one bill of exceptions. But we are convinced that no harm was done as the jury had full light concerning all of the circumstances surrounding the purchase, and the subsequent fluctuations in the price of the stock, and the trial judge stated to them that the testimony was not to be regarded as conclusive or binding evidence of market value, but only as some evidence which they had the right to consider in determining the question.

Among the elements to be taken into account in estimating the damage to the plaintiff company was the value of the cuts and fills in the road: West Chester & Wilmington Plank Road Co. v. County of Chester, 182 Pa. 40; Somerton Turnpike, 16 Pa. Superior Ct. 400. We cannot say that there was any reversible error in permitting the ancient books of the plaintiff company to be used as some evidence for the purpose of showing that in its original construction the road was an excavated and graded highway. The words used in the books "levelling, forming, and smoothing" indicate the doing of such work. This was followed by the testimony of experts who had examined the road and who testified to the physical evidence that work of this character had been done. Considering the fact that the plaintiff company was chartered in the beginning of the last century, no doubt the proof offered was the best obtainable upon the subject.

We find no error in the answers made to the various requests for charge called to our attention. In view of the testimony explaining that the recent net earnings of the plaintiff company had been greatly reduced by expenditures for large permanent improvements, the trial judge was right in quali-

fying his answer to the defendant's second request. Of course,
the value of the franchises depended to a degree upon the
earning capacity of the plaintiff company; whether or not it
"largely" depended upon this element was for the jury to say
under all the evidence in the case; and this is practically all
that the qualification stated. The whole matter is thoroughly
and correctly covered in the general charge of the trial judge,
wherein he more than once clearly points out the various ele-
ments to be considered by the jury in estimating the value of
the franchise and the other component parts of the property
taken.

The remaining assignments complain of the manner in
which the case was submitted to the jury. No reversible error
is shown by any of these specifications. The alleged misstate-
ments of fact were not material, and as they were not spe-
cially called to the attention of the trial judge the complaints
as to them will not be considered.

The assignments of error are all overruled and the judgment
is affirmed.