## Commonwealth v. Fry.

*Harvey A. Gross*, for motion; *Frederick B. Gerber*, for Commonwealth.

SHERWOOD, J., Dec. 16, 1929.—This is a motion to quash a bill of indictment. A number of reasons were originally assigned, but at the argument the only reason urged was that the indictment is not covered by any act of assembly and the crime alleged is not a common law crime. The indictment is drawn under section 320 of the Act of May 17, 1921, P. L. 682, known as the Insurance Company Law of 1921. The defendant was the secretary of the Spring Garden Mutual Fire Insurance Company, a corporation incorporated under the Special Act of April 14, 1864, P. L. 419. Its powers are derived from the General Act of April 2, 1856, P. L. 211. Defendant's contention is that the Insurance Company Law of 1921 does not apply to the Spring Garden Mutual Fire Insurance Company by reason of the following provision of section 103: "Nothing in this act shall be construed to interfere with the charter provisions or operations of any domestic mutual fire insurance company heretofore organized under any general or special law of this Commonwealth."

Section 103 defines the scope of the act, "except as in this act otherwise provided, the provisions of this act, in so far as they are applicable, shall apply," and then follows the enumerated classes. These words which open the section refer, in our opinion, to section 105, where the classes of organizations to which it shall not apply are enumerated. Domestic mutual fire insurance companies are not excluded in section 105. If the Legislature meant to make the Act of 1921 inapplicable to domestic mutual fire insurance companies, it seems to us that section 105 would be the place to insert such exclusion. If the Legislature meant by the closing sentence of section 103 to make the Act of 1921 inapplicable to domestic mutual fire insurance companies, there is no reason to suppose that it would not have done so. It seems to us that the Legislature would have said that the act shall not apply to any domestic mutual fire insurance company. What it does say is entirely different. It does not touch the subject of the applicability of the act to domestic mutual fire insurance companies, but merely says "Nothing in this act shall be construed to interfere with the charter provisions or operations of such com-

panies." The primary right of the Spring Garden Company under its charter was to write insurance. How can it be said that that right is in any way interfered with under section 320 of the Insurance Company Law? All that is required by the section is the report of its business and a statement of its financial condition. It seems to us that the only effect of the language above quoted is to prevent the act from interfering with the charter provisions or operations of domestic mutual insurance companies.

The defendant further asserts that the language of section 104 of the Act of 1921 confirms his contention. We quote the section: "Any insurance company heretofore organized under any general or special law of this Commonwealth to transact any of the classes of insurance authorized herein, and to which this act does not apply, may transact any one or more of the classes of insurance authorized by section two hundred and two (202) of this act to be transacted by any such insurance company, and becomes subject to the provisions of this act, by providing the capital and reserve required for such companies organized hereunder, and by filing with the insurance commissioner a resolution of the board of directors or trustees, approved by the stockholders or members at a meeting specially called for that purpose, accepting the provisions of the constitution and of this act, and agreeing to be governed thereby as fully as though organized hereunder. The charters of all insurance companies accepting the provisions of this act shall, after such acceptance, be repealed and of no effect in so far as the same may be inconsistent with the provisions of this act. Any domestic mutual fire insurance company or association may elect to adopt and become subject to the provisions of this act, in lieu of any act or acts heretofore governing such company or association, by resolution of its board of directors, duly approved by a majority of the members present at any annual meeting or special meeting called for that purpose, of which all members shall be given at least two weeks' notice by mail. These resolutions and the vote approving them, duly certified to by the president and secretary, shall be filed with the insurance commissioner, and, when approved by him, the company shall then and thereafter become subject to the provisions of this act."

The subject-matter of section 104 divides itself into two parts. The first portion of this section provides a manner in which companies to which the act does not apply may adopt it, and the second part provides a method by which any domestic mutual fire insurance company or association may adopt it. The first portion of the section covers all companies, stock and mutual. Why, then, the second part? Why provide how mutual fire insurance companies may adopt if a method is already provided in the first part? In answering this inquiry, it must be remembered that domestic mutual fire insurance companies divide themselves into two classes: those within the scope and those without the scope of the act.

A company is within the scope of the act when it falls within one of the classes enumerated in section 103 under *a*, *b*, *c*, [*d*] *e*, *f*, *g*, and *h*, and a company is without the scope of the act when not falling within one of said classes. Keeping in mind that these classes of corporations are within the scope of the act, but as to them it is conditioned that "Nothing in this act shall be construed to interfere with the charter provisions or operations of any domestic mutual fire insurance company heretofore organized under any general or specific law of this Commonwealth;" that is to say, while these classes of corporations are within the scope of the act, as to certain powers and operations they are subject to law outside the act. While the Legislature could constitutionally have subjected these classes of corporations to the act without pre-

serving any existing rights or duties, just as it did with all other corporations within the scope of the act, for reasons as to which no profit would result from speculation to discover them, it placed them within the scope of the act and at the same time allowed them to remain subject to certain laws outside the act.

But the advantages of uniformity (and it is to be observed that the act is designed to secure general uniformity as to insurance company [law]—note its title—the Insurance Company Law of 1921) would naturally prompt the thought that these classes of corporations should not have the door closed to them against their breaking away from laws outside the act.

If the Legislature had stopped at the end of part one of section 104, there would have been no method provided by which these corporations could have broken away from these outside laws. The first of the section would not avail them. It is limited in its application to those companies which are not within the scope of the act. Section 104 thus furnishes convincing evidence of the meaning of the last sentence of section 103. If the meaning of this sentence is so interpreted as to entirely exclude domestic mutual fire insurance companies from the section, it throws section 104 out of harmony with the obvious tenor and effect of the act.

The Supreme Court, in Munhall Borough *v.* Mifflin Township, 210 Pa. 527, said: "It is an established rule in construing a statute that the intention of the lawgiver and the meaning of the law are to be ascertained by viewing the whole and every part of the act. One part of a statute must be so construed by another that the whole may, if possible, stand; and that, if it can be prevented, no clause, sentence or word shall be superfluous, void or insignificant. If any section be intricate, obscure or doubtful, the proper mode of discovering its true meaning is by comparing it with the other sections, and finding out the sense of one clause by the words or obvious intent of another. In Coke on Littleton, 381*a*, it is said that it is the most natural and genuine exposition of a statute to construe one part of the statute by another part of the same statute, for that best expresseth the meaning of the makers;" and in the same case, "A construction which would leave without effect any part of the language used should be rejected if an interpretation can be found which will give it effect." In Umholtz's License, 191 Pa. 177, "Statutes are to be construed as best to effectuate the intention of the Legislature, though such construction may seem contrary to the letter;" and in Turnpike Road Co. *v.* Montgomery County, 228 Pa. 1: "In construing an act of assembly, the pertinent rules of interpretation should be kept in mind and the effort should be to find a reasonable meaning for all of the words used and to give force and effect to every part; the construction placed upon each part should be logical in itself and consistent with that given to every other." In Folmer's Appeal, 81 Pa. 133, the same authority said: "A proviso is defined to be something grafted upon a preceding enactment for the purpose of taking special cases out of the general enactment and providing specially for them. It is to be strictly construed; it takes no case out of the enacting clause which is not fairly within the terms of the proviso;" and, as pointed out by Endlich on Interpretation of Statutes, page 458, "it is quite possible that in the same statute both the strict and liberal construction may be applied."

In the Insurance Company Law of 1921 we have a long act dealing primarily with civil matters, and as a part of the same act there are certain penalties provided. While section 320, which governs penal matters, is subject to the strict rules of construction, other matters contained in the act are subject to the ordinary rules of construction of statutes.

Applying the above rules of construction, we conclude that the Insurance Company Law of 1921 is applicable to the Spring Garden Mutual Fire Insurance Company, and that there is nothing in the requirement of section 320 as to reports of financial condition which interferes with the charter provisions or operations of said company, and that, consequently, section 320 is applicable to the instant case. It follows that the indictment should not be quashed, as it is based upon law supporting the offense charged.

And now, to wit, Dec. 16, 1929, the motion to quash the bill of indictment in this case is overruled and refused.　　From Richard E. Cochran, York, Pa.