488 A.2d 270

**EQUITABLE GAS COMPANY and Pennsylvania Public Utility Commission, Appellees,**

v.

**CITY OF PITTSBURGH, Louis R. Gaetano, Director, Department of Public Works, City of Pittsburgh, and George Jacoby, Treasurer, City of Pittsburgh, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 1984.

Decided Feb. 21, 1985.

Reargument Denied June 11, 1985.

54

D.R. Pellegrini, City Sol., Marvin A. Fein, Deputy City Sol., Pittsburgh, for appellants.

Lawrence B. Nydes, Carroll F. Purdy, Pittsburgh, for Equitable Gas Co.

Richard S. Herskovitz, Harrisburg, for Pa. Public Utility Com'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This is an appeal from an Order of the Commonwealth Court dismissing preliminary objections and granting peremptory judgment in mandamus for Equitable Gas Company ("Equitable") and the Pennsylvania Public Utility Commission ("PUC") against the City of Pittsburgh ("City"). The result reached by the Commonwealth Court seriously undercuts a carefully designed legislative scheme intended to provide the municipality with a right of set-off against persons having claims or accounts against the political subdivision. The Commonwealth Court has also ignored the clear pronouncements of this Court in setting forth the prerequisites for the issuance of mandamus. We are therefore constrained to reverse the instant order and to remand the matter to the Court of Common Pleas of Allegheny County for resolution.

### I.

This case arose out of two separate proceedings before the PUC in which the City was ordered to reimburse Equitable a total of $114,890.67 for the latter's relocation costs in connection with the construction of new City bridges. These orders were entered against the City on August 10, 1981 and December 31, 1981. No appeal was taken from these orders. Subsequently, in 1982 when presented with invoices from Equitable, the City made a demand for pay-

ment from Equitable of annual permit fees totaling $208,-620.00 and informed Equitable that a set-off in the amount owed under the PUC orders would be made. Equitable rejected this arrangement and demanded payment of its claimed debt by instituting an action in the Commonwealth Court in mandamus against the City for a total amount of $114,890.67.

The Commonwealth Court ruled *sua sponte* on January 14, 1983 that it did not have jurisdiction over the action under 42 Pa.C.S. § 761(c) because the PUC was not a party to the action, and ordered the case transferred to the Court of Common Pleas of Allegheny County. Equitable then filed an application for reconsideration on January 28, 1983 stating that it intended to petition the PUC to join as a party-petitioner. On February 1, 1983, while that application was pending, the City informed Equitable that it was bound by statute, Act of July 1, 1937, P.L. 2611, *as amended*, 53 P.S. §§ 7231 *et seq.* (1972), to set-off the orders against the amount Equitable owed to the City. The City also stated that under section 7233, Equitable was required to enter into an agreement with the City and that should it fail to do so, the City would take action pursuant to section 7234. The City instituted an action for set-off in the Common Pleas Court of Allegheny County upon Equitable's failure to recognize the City's right of set-off.

The Commonwealth Court on March 4, 1983 stayed its previous order directing transfer of the matter to the court of common pleas, pending the PUC response to the joinder petition. On May 20, 1983 the PUC requested the right to join as party-petitioner and that request was granted by the Commonwealth Court. Thereafter, the PUC filed a motion for peremptory judgment which was also granted. We are now called upon to consider the propriety of the grant of that motion, exercizing jurisdiction pursuant to 42 Pa.C.S. § 723(a).

## II.

Mandamus is the proper remedy only where the plaintiff demonstrates (1) a clear legal right in the petition-

er, (2) a corresponding duty in the respondent, and (3) absence of any other appropriate or adequate remedy. *Shaler Area School District v. Salakas*, 494 Pa. 630, 432 A.2d 165 (1981); *Canonsburg General Hospital v. Department of Health of the Commonwealth of Pennsylvania*, 492 Pa. 68, 422 A.2d 141 (1980); *Bronson v. Commonwealth of Pennsylvania Board of Probation and Parole*, 491 Pa. 549, 421 A.2d 1021 (1980), *cert. denied*, 450 U.S. 1050, 101 S.Ct. 1771, 68 L.Ed.2d 247 (1981); *Philadelphia Newspapers, Inc. v. Jerome*, 478 Pa. 484, 387 A.2d 425 (1978), *appeal dismissed*, 443 U.S. 913, 99 S.Ct. 3104, 61 L.Ed.2d 877 (1979); *Princeton Sportswear Corp. v. Redevelopment Authority*, 460 Pa. 274, 333 A.2d 473 (1975); *Valley Forge Racing Ass'n. v. State Horse Racing Comm'n.*, 449 Pa. 292, 297 A.2d 823 (1972). As stated in *Commonwealth ex rel. McLaughlin v. Erie County*, 375 Pa. 344, 100 A.2d 601 (1953), "mandamus will not issue unless the right of the petitioner is clear and specific; it can never be invoked in a doubtful case." *Id.*, 375 Pa. at 351, 100 A.2d at 604. *See also Chilli v. McKeesport School District*, 334 Pa. 581, 583, 6 A.2d 99 (1939). Where doubt as to the plaintiff's right or the defendant's duty exists, the remedy is neither appropriate nor available. *Leff v. N. Kaufman's, Inc.*, 342 Pa. 342, 346, 20 A.2d 786, 789 (1941). To succeed in an action of mandamus, the plaintiff must show an immediate, specific, well defined and complete legal right to the thing demanded. *Purcell v. City of Altoona*, 364 Pa. 396, 72 A.2d 92 (1950).

■ Moreover, Rule 1098 of the Pennsylvania Rules of Civil Procedure directs that peremptory judgment may be entered only where the right of the plaintiff is clear. Pa.R. C.P. 1098. Where there are triable issues of fact that requirement is not met. *Shroyer v. Thomas*, 368 Pa. 70, 81 A.2d 435 (1951).

### III.

There is no question that the City incurred a obligation with Equitable for relocation cost. The City has at all times

conceded that point. What is in issue is the City's claim against Equitable. That claim is disputed and could not be adjusted in the mandamus action instituted by Equitable against the City in the Commonwealth Court. In essence the City is contending that the legislature has conferred in it a priority against those who are asserting claims against the City. An analysis of the pertinent statutes convincingly supports the City's view.

Under section 7232 a political subdivision is required to inquire whether a person having a claim against it is indebted to it for or on account of any delinquent taxes, municipal claims, or outstanding judgments. Section 7232 provides:

> Every political subdivision, before approving or paying the claim or account of any person against such political subdivision, shall have power to inquire of the receiver of taxes of the political subdivision whether such person is indebted to it for or on account of any delinquent taxes or municipal claims. In any case where it shall be found that such person is so indebted to the political subdivision, or when such person is indebted to the political subdivision for any sum of money, which debt shall have been reduced to judgment in favor of such political subdivision, the approval and payment of such claim or account in whole or in part shall be withheld by the officer or employe authorized by law to make such approval or payment, until such person shall have entered into an agreement with the political subdivision as hereinafter provided.

53 P.S. § 7232.

■ The word "person" as used in this section is defined "to include any individual, association, copartnership, and corporation." 53 P.S. § 7231. This would bring Equitable within the definition of "person" as defined under the provision. Equitable does not contest that it would fall within the definition of "person."

■ Equitable argues, however, that section 7232 should be construed as requiring all claims, including taxes and municipal claims to be reduced to judgment. Such an interpretation is contrary to accepted methods of statutory construction. A reading of section 7232, *supra*, discloses that the legislature intended to allow set-off in three situations: (1) delinquent taxes, (2) municipal claims, and (3) indebtedness to the political subdivision, *"which debt shall have been reduced to judgment in favor of such political subdivision."* 53 P.S. § 7232 (emphasis added). Appellant would have the emphasized language act as a gloss upon the entire section. We reject this argument because we must adhere to the accepted principle of English grammar, 1 Pa.C.S. § 1903(a), which states that unless plainly meant otherwise a modifying clause operates only upon the phrase preceding it. This has long been the mode of statutory construction in this jurisdiction. *Chestnut Hill & Spring House Turnpike Road Co. v. Montgomery County*, 228 Pa. 1, 76 A. 726 (1910).

We further support our view that delinquent taxes and municipal claims need not be reduced to judgments by noting that prior to 1943, section 7232 only contained language relating to delinquent taxes and municipal claims. The 1943 amendatory act added to this section the words, "or when such person is indebted to the political subdivision for any sum of money, which debt shall have been reduced to judgment in favor of such political subdivision." Act of April 15, 1943, P.L. 53, No. 32, § 1. With the insertion of the above-quoted language the legislature did not require that delinquent taxes and municipal claims be reduced to judgments, instead it increased the category of obligations for which the City could claim set-off. The statute as it stands simply means that the City can set-off delinquent taxes, municipal claims,[1] and judgments.

1. Equitable also argues that the annual fee for the use and maintenance of City bridges does not fall within the definition of "municipal claim." Although this is an issue which will ultimately be resolved by the Court of Common Pleas of Allegheny County, if on its face the City's annual bridge fee is not a municipal claim, then it would be

## IV.

Section 7232 establishes the political subdivision's priority against its creditors by authorizing its withholding of payment "until such persons shall have entered into an agreement with the political subdivision ..." 53 P.S. 7232. The authority conferred under section 7232 is reinforced by section 7233 [2] which permits the political subdivision to

> ludicrous to bar mandamus relief on the theory that the City has a right to set-off. Section 7101, however, broadly defines the term "municipal claim":
>
>> The words "municipal claim," as used in this act, unless specifically indicated otherwise, mean and include both (1) the claim arising out of, or resulting from, a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality, although the amount thereof be not at the time definitely ascertained by the authority authorized to determine the same, and a lien therefor be not filed, but becomes filable within the period and in the manner herein provided, (2) the claim filed to recover for the grading, guttering, macadamizing, or otherwise improving, the cartways of any public highway; for grading, curbing, recurbing, paving, repaving, constructing, or repairing the footways thereof; for laying water pipes, gas pipes, culverts, sewers, branch sewers, or sewer connections therein; for assessments for benefits in the opening, widening, or vacation thereof; or in the changing of water-courses or the construction of sewers through private lands; or in highways of townships of the first class; or in the acquisition of sewers and drains constructed and owned by individuals or corporations, and of rights in and to use the same; for the removal of nuisances; or for water rates, lighting rates, or sewer rates, and (3) the claim filed to recover for work, material, and services rendered or furnished in the construction, improvement, maintenance, and operation of a project or projects of a body politic or corporate created as a Municipal Authority pursuant to law.
>> 53 P.S. § 7101.
>
> Although the statute does not specifically enumerate a bridge fee as a municipal claim, the language could arguably be construed to encompass such a charge. We therefore cannot conclude that on its face the City's annual bridge use and maintenance fee is not a municipal claim.

2. The political subdivision shall have power to enter into such agreements as it may deem necessary to assure the payment of delinquent taxes and municipal claims and unpaid judgments, interest, and costs thereon by persons having claims or accounts against the political subdivision, including therein provision for the application of moneys due by the political subdivision on any such claim or account to the payment of such delinquent taxes, municipal claims and unpaid judgments, interest, and costs and the satisfaction of such taxes, municipal claims and judgments, interest, and costs on

enter into such agreements necessary to assure payment by the indebted person. Under section 7233 the political subdivision can apply money due by crediting the account of such indebted person. Where one is recalcitrant and resists the statutory scheme the legislature provided that the political subdivision is authorized to continue to withhold payment of the person's claim and advise the indebted person that it has set off that claimed obligation against the City's claim. 53 P.S. 7233. Additionally, the political subdivision is vested with the authority to bring an action in the common pleas court for the enforcement of the set-off and the political subdivision's claim.[3]

the public records in whole or in part. If any person shall, upon demand of the political subdivision, refuse to enter into any such agreement, the officer or employe of the political subdivision authorized to approve or pay such accounts shall continue to further withhold his approval or payment of such claim or account against the political subdivision or any part thereof, and advise such person that the political subdivision has a set-off against his claim or account or the part thereof not approved or paid for delinquent taxes, municipal claims, or a judgment or judgments held against such person and the interest and costs thereon, and that payment thereof will be refused until such delinquent taxes, municipal claims or judgments with the interest and costs thereon are paid or provision for their payment made.
53 P.S. § 7233.

3.    If any person who is indebted to the political subdivision on account of delinquent taxes, municipal claims or judgment as aforesaid, and who has a claim or account against such political subdivision, shall, upon demand of the political subdivision, refuse, neglect or fail to enter into an agreement as hereinbefore provided, such political subdivision may petition the court of common pleas of the county, setting forth the facts of the case and asking for a rule to show cause why a decree should not be made that the amount of such delinquent taxes, municipal claim or judgment owing to the political subdivision, be set-off against the claim or account which such person has against the political subdivision, or against the proceeds of any judgment secured thereon. Thereupon the court shall grant a rule against all parties interested to appear and show cause why such a decree should not be made. The rule shall be returnable in not less than ninety (90) days from the date the petition was presented. If, during such period, prior to the return of such rule, the said person having such claim or account against the political subdivision shall enter into an agreement therewith, satisfactory to the political subdivision, the said proceedings upon notice given to the said court shall terminate.
53 P.S. § 7234.

## V.

■ It is apparent that the legislative intent to provide the political subdivision with a priority in collecting claims against those charging a counter obligation was not intended to be frustrated by the form of action chosen by those asserting the counter obligation. Here Equitable, instead of proceeding against the City in the Court of Common Pleas, chose to join the PUC and institute mandamus in the Commonwealth Court. In doing so, Equitable attempted to deny the City use of the set-off provisions since mandamus does not permit counterclaims. Pa.R.C.P. 1096.

■ Nor should a court which is without jurisdiction to entertain the political subdivision's set-off claim attempt to hear the matter if the effect of that court's exercise of its jurisdiction results in defeating the clear statutory scheme. *Francis v. Corleto,* 418 Pa. 417, 211 A.2d 503 (1965). *See generally Lakeland Joint School District Authority v. School District of Scott Township,* 414 Pa. 451, 200 A.2d 748 (1964); *McCandless Township v. Wylie,* 375 Pa. 378, 100 A.2d 590 (1953).

■ Moreover, it is obvious that mandamus does not lie under the situation here presented. Relief in mandamus may not be granted where the result would be contrary to public policy. *Taylor v. Abernathy,* 422 Pa. 629, 222 A.2d 863 (1966); *Travis v. Teter,* 370 Pa. 326, 87 A.2d 177 (1952); *Waters v. Samuel,* 367 Pa. 618, 80 A.2d 848 (1951). The legislature has determined that this priority to the political subdivision in the collection of claims against those who asserted counter obligations was in the public interest. Mandamus may not be used to defeat that objective.

■ Additionally, the traditional prerequisites for the application of mandamus are not here applicable. There is not a clear legal right in Equitable since the City's claim, if sustained, would extinguish that obligation. There was not a corresponding duty on the part of the City to pay Equitable since the City had the right and the obligation to set

off Equitable's obligation against the City's claim against Equitable. *See Francis v. Corleto, supra.* Finally, there was a remedy specifically designed by the legislature to cover this situation which provides for the resolution of all of the issues raised in this dispute.

Accordingly, the order of the Commonwealth Court granting peremptory judgment in favor of Equitable and PUC is reversed and the matter is remanded to the Court of Common Pleas for resolution.

HUTCHINSON, J., files a dissenting opinion.

HUTCHINSON, Justice, dissenting.

I dissent. The carefully designed legislative scheme in the Act of July 1, 1937, P.L. 2611, as amended by the Act of April 15, 1943, P.L. 53, No. 32, 53 P.S. §§ 7231–7235, was intended to authorize "political subdivisions, other than cities of the first class, to set-off delinquent taxes, municipal claims and judgments held thereby, and penalties, interest, and cost due thereon, against claims and accounts due by such political subdivisions" and to provide a procedure for doing so. Title of the Act of July 1, 1937, as amended Act of April 15, 1943. The legislature gave the municipalities this authority to aid in their collection of claims "arising out of, or resulting from a tax assessed, service supplied, work done, or improvement authorized and undertaken, by a municipality...." Act of May 16, 1923, P.L. 207, § 1, as amended, 53 P.S. § 7101. It was never intended that this scheme be utilized to circumvent the exclusive authority vested in the Public Utility Commission "to order any [rail highway] crossing ... to be relocated or altered", 66 Pa. C.S. § 2702, or to determine the allocation of related costs, 66 Pa.C.S. § 2704. *See City of Philadelphia v. Philadelphia Electric Company,* 504 Pa. 312, 473 A.2d 997 (1984). The majority opinion now invites all of Pennsylvania's municipalities to ignore the Commission's authority in similar

fashion. By denying the Commission's right to mandamus, set forth in 66 Pa.C.S. § 502, in support of its own unappealed orders in this case, the majority has unwittingly but effectively eroded that body's authority in this type of case.