## Pogel v. State Farm Fire & Casualty Insurance Company

C.P. of Allegheny County, no. GD 97-17582.

*Gary Davis* and *Ellen Doyle* for plaintiffs.
*Thomas Allen,* for defendant.

HORGOS, *J.,* August 30, 2005—Plaintiffs, Frank Pogel and Elaine Pogel, David Carpenter and Beatrice Carpenter, filed a class action against defendant, State Farm Fire and Casualty Insurance Company, seeking to recover the difference between the actual cash value of losses to their personal property and the replacement cost value of those losses. Plaintiffs argue that State Farm's

interpretation of its replacement cost provisions is unreasonable and that the policy language is ambiguous and must be construed in favor of the insureds under Pennsylvania case law.

Plaintiffs' amended complaint contained four counts: (1) breach of contract; (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. 201-1 et seq.; (3) violation of Pennsylvania's Bad Faith Statute, 42 Pa.C.S. §8371; and (4) breach of the duty of good faith and fair dealing.

Following a certification hearing, the action was certified as a class action by order of November 30, 2000. Defendant filed a motion for partial summary judgment which the court granted by order dated June 26, 2002, in which it dismissed all claims arising under Pennsylvania's Unfair Trade Practices and Consumer Protection Law and all claims arising under Pennsylvania's Bad Faith statute (Counts II and III). The court also dismissed those claims for breach of contract and breach of the duty of good faith and fair dealing which arose from losses suffered prior to October 29, 1996. Further, as a result of the Pennsylvania Superior Court's holding in *Burton v. Republic Insurance Company,* 845 A.2d 889 (Pa. Super. 2004), plaintiffs have stipulated that the claims of class members covered by all State Farm policy forms but two are dismissed with prejudice. The remaining claims arise from the specific language of State Farm's policy forms FP-7923 and FP-7927.

Defendant filed a motion for summary judgment and plaintiffs filed a cross motion for summary judgment regarding the remaining claims. In its motion for summary judgment, defendant argues that plaintiffs' claims

must be dismissed because the Pennsylvania Superior Court has already affirmed the validity of similar replacement cost provisions in *Burton, supra*. Plaintiffs, however, contend in support of their motion for summary judgment that the unique language of the policies now at issue differs substantially from the language addressed by the court in *Burton* and the reasoning of the Superior Court in *Burton* does not resolve the issue now before this court.

In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Summary judgment may only be entered in cases where the right is clear and free from doubt. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992). Summary judgment is proper if the moving party is entitled to judgment as a matter of law. *Santillo v. Reedel,* 430 Pa. Super. 290, 294, 634 A.2d 264, 266 (1993).

The language of State Farm's policy forms at issue provides as follows:

"(b) We will pay the cost to repair or replace:

"(1) other personal property and other structures (except fences) under *Dwelling Extension;* and

"(2) carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings; subject to the following:

"(a) loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis; . . . ." (First amended complaint, exhibit 1.)

State Farm maintains that section b.(2)(a) applies to the property set forth in section b.(1) as well as the property in section b.(2). Plaintiffs argue that such an interpretation is unreasonable because it (1) ignores the outline form used throughout the policy; (2) violates the rules of grammar; (3) is at odds with how State Farm interprets the remainder of the policy; and (4) renders the separation of property into sections b.(1) and b.(2) completely meaningless.

The court must first determine if State Farm is correct in its assertion that the Pennsylvania Superior Court's holding in *Burton* applies to the within matter. In *Burton,* the plaintiffs asserted a breach of contract claim against Republic Insurance Company, arguing that the term in Republic's policy, "actual cash value," was ambiguous because it was not defined in the policy and could not be consistently interpreted to mean "replacement cost less depreciation" throughout the policy.

Following a non-jury trial, this court found that the language was not ambiguous or unconscionable and held in favor of Republic Insurance Company. The Pennsylvania Superior Court affirmed in *Burton v. Republic Insurance Company, supra.* The language at issue in *Burton* was not the same as the relevant language in the State Farm policies which are the subject of plaintiffs' complaint. This court, nor the Superior Court, addressed the issue raised herein by plaintiffs because the language of the respective policies is not the same. Thus, the court must proceed to examine the language of the State Farm policies now at issue.

The issue may be summarized as follows: Does the condition set forth in section b.(2)(a) of the loss settle-

ment provision, that "loss to property not repaired or replaced within one year . . . will be settled on an actual cash value basis" apply to the property listed in both b.(1) and b.(2), or does it apply only to the property listed in section b.(2)? If section b.(2)(a) applies only to the property listed in section b.(2), or even if the policy language is ambiguous in this respect, then State Farm's insureds were entitled to recover replacement cost benefits without having to first repair or replace their lost personal property.

In examining this issue, the court must be guided by traditional and well-settled principles governing the interpretation of insurance contracts. The interpretation of an insurance contract is a question of law to be determined by the court. When interpreting an insurance contract, the goal is to determine the intent of the parties as manifested by the language of the written instrument. *Standard Venetian Blind Co. v. American Empire Insurance Co.,* 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). The insurance contract must be construed as a whole with all of its provisions given their proper effects. *Luko v. Lloyd's London,* 393 Pa. Super. 165, 167, 573 A2d 1139, 1142 (1990). The court may not rewrite the terms of the policy under the guise of interpretation, and the court must accord the policy terms their accepted and plain meanings. *Timbrook v. Foremost Insurance Co.,* 324 Pa. Super. 384, 388, 471 A.2d 891, 893 (1984).

To be given effect, the language of an insurance policy must be clear and unambiguous. *Standard Venetian Blind Co., supra* at 305, 469 A.2d at 566. The Pennsylvania Superior Court defined an ambiguous contract as one which "is reasonably susceptible of different constructions and capable of being understood in more than one

sense." *Gamble Farm Inn Inc. v. Selective Insurance Co.,* 440 Pa. Super. 501, 505, 656 A.2d 142, 143-44 (1995). Further, ambiguous provisions in an insurance contract are to be construed in favor of the insured and against the insurer, the drafter of the contract. *Standard Venetian Blind Co., supra* at 305, 469 A.2d at 566.

Plaintiffs maintain that the natural reading of the subject provision, according to the outline form in which it was written, is that the condition set forth in b.(2) applies only to the property listed in b.(2). A natural reading of the provision leads logically to plaintiffs' conclusion. A condition set forth under one subsection of the outline form utilized by State Farm is not properly applied to the property listed in a different subsection of the outline.

Plaintiffs submitted expert reports of Professor Beverly A. Sauer and Mary Newton Bruder Ph.D. regarding the effect of the outline form used in the policies. (Plaintiffs' supplemental memorandum of law in opposition to defendant's motion for partial summary judgment, exhibits 1 and 2.) They concluded that the outline form has a significant impact on how the average insured would read and understand the replacement cost provisions as set forth in the endorsement. Dr. Bruder stated that the purpose of an outline form is to clarify the relationship of items. In an ordinary outline form, readers would not reasonably assume that subtopics under one section apply to subtopics under another section. Applying this rule to the outline form used by State Farm in Option RC, policyholders would not expect that item (a) listed under item (2) of the provision would reasonably apply to item (1) as well. State Farm's interpretation is not a correct interpretation according to the outline form in which the contract is written.

State Farm ignores the outline form and argues that the provision is properly read as one continuous sentence in which the conditions listed under section b.(2) apply to b.(1) as well. State Farm's argument simply ignores why it chose to separate the types of property listed in section b.(1) of the endorsement from the types of property listed in section b.(2). Under State Farm's interpretation, there is no reason for separating the types of property into two different sections since in practice they are treated the same. State Farm's interpretation renders this separation meaningless.

Plaintiffs argue that it is an accepted principle of English grammar and contract interpretation that "a limiting clause in a policy is to be confined to the last antecedent unless the context or evident meaning requires a different construction." 13 Appleman, *Insurance Law and Practice,* section 7387 at 181-82 (1976); see also, Black's Law Dictionary, fifth edition, p. 794. Plaintiffs correctly state that the Pennsylvania Supreme Court has long recognized the "last antecedent rule" as the accepted method of statutory construction. See *Chestnut Hill & Spring House Turnpike Road Co. v. Montgomery County,* 228 Pa. 1, 76 A. 726, 727 (1910) ("a limiting clause or phrase, following several expressions to which it might be applicable, [is] to be restrained to the last antecedent"); *Equitable Gas Co. v. City of Pittsburgh,* 507 Pa. 53, 488 A.2d 270 (1985). The Superior Court extended use of the last antecedent rule to the interpretation of insurance policies in *Buntz v. Gen. Am. Life Ins. Co.,* 136 Pa. Super. 284, 289, 7 A.2d 93, 95 (1939). See also, *Contrans Inc. v. Ryder Truck Rental Inc.,* 836 F.3d 163, 167-68 (3d Cir. 1987) (applying Pennsylvania law and using last antecedent rule to interpret an insurance policy).

Applying the last antecedent rule to the language of Option RC, a lay reader would understand the phrase "loss to property not repaired or replaced . . . will be settled on an actual cash value basis" to apply only to the last antecedent, *i.e.,* "carpeting, domestic appliances, awnings and outdoor antennas." Accordingly, the "repair or replacement" condition would not apply to the "other personal property" listed in section b.(1).

Further, in her report, Professor Sauer addressed the peculiar use of a semicolon in the relevant provisions of State Farm's policies. In standard usage, semicolons serve two primary functions. They separate elements of a series in which items already contain commas, or they join two or more grammatically complete clauses forming a compound sentence. The semicolon following the word "buildings" in section b. does not perform either of these functions. It follows, rather than separates, a series of items, and it joins an independent clause with a dependent clause which could not stand alone as a grammatically complete sentence. As Professor Sauer explains in her report:

"The punctuation in part b. is both ungrammatical and unconventional. In ordinary usage, writers would never use a semicolon as a full stop to separate a phrase from the sentence or noun that the phrase modifies. Thus, a writer following ordinary usage would not ordinarily separate the phrase *'; subject to the following'* from the noun series that precedes it *('carpeting, domestic appliances . . . buildings;')*. This line of argument follows one of the most basic principles of sentence structure. The present use of the semicolon creates a fragment that breaks the sense of the sentence. The result is both grammatically and syntactically incorrect." (Plaintiffs' supple-

mental memorandum of law in opposition to defendant's motion for partial summary judgment, exhibit 1.)

As explained by Professor Sauer, State Farm's insureds cannot be expected to glean from its non-standard use of semicolons that the limitation in section b.(2)(a) applies to the "other personal property" listed in section b.(1). Instead, they may reasonably disregard the incorrect punctuation in discerning the meaning of the contract language and rely on the policy's outline form and the standard rule of grammar that a clause qualifies only the language which immediately precedes it.

Further, a review of the language and outline structure used throughout the policies shows that the reader cannot ignore the outline structure and read the provisions as continuous text. Plaintiffs point out one such example on page 4 of policy form FP-7923.

"(2) *Property not covered.* We do not cover: . . .

"(b) animals, birds or fish;

"(c) any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are: . . .

"(2) designed for assisting the handicapped;" (Plaintiffs' appendix exhibit 1 at 4.) (emphasis in original)

Under State Farm's method of interpretation, section 2.c.(2) would modify section 2.b., resulting in coverage for a policyholder's fish, if it is designed for assisting the handicapped, but not licensed for use on public highways. (Plaintiffs' memorandum in opposition to defendant's motion for summary judgment and in support of plaintiffs' cross-motion for summary judgment, pp. 15-16.)

In other sections of the policies, it is obvious that when State Farm wanted conditions to apply to a specific provision, it placed those conditions immediately underneath that particular provision, in accordance with the outline form employed throughout the policy. See, for example, policy FP-7923, page 16 (first amended complaint, exhibit 1).

This court is mindful that the specific provisions at issue cannot be read in a vacuum. *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). An insurance policy must be examined in its entirety, giving all of the provisions their proper effect. When reading State Farm's policies in their entirety, the natural reading and logical conclusion supports plaintiffs' construction of the provision at issue. According to the policy terms, their accepted and plain meaning leads the court to agree with plaintiffs' conclusions.

State Farm continues to argue that the replacement cost provision is not ambiguous and in support of this averment points to the Pennsylvania Superior Court's holding in *Burton, supra,* as well as various other appellate court decisions which have held that particular replacement cost provisions requiring the insureds to repair or replace their lost personalty before they can recover replacement cost are valid and unambiguous. Indeed, this court specifically held in *Burton* that Republic Insurance Company's replacement cost provision was not ambiguous. That is not to say, however, that all replacement cost provisions with the same requirements, no matter what the language used, are clear and unambiguous. That was certainly not this court's intention or meaning in *Burton,* and is not this court's interpretation of the cases relied

upon by State Farm. The interpretation of an insurance contract is a question of law to be determined by the court, and the court finds that plaintiffs' interpretation gives the condition that "loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis" its accepted meaning. At the very least, the provision at issue is ambiguous and must be construed in favor of the insureds. Accordingly, applying the principles of proper contract interpretation established under Pennsylvania law to the policies at issue establishes that plaintiffs are entitled to summary judgment on the remaining contract claims.

## ORDER

And now, August 30, 2005, upon consideration of the parties' cross-motions for summary judgment and the memoranda filed in support thereof, it is ordered, adjudged and decreed that plaintiffs' cross-motion for summary judgment is granted and defendant's motion for summary judgment is denied. Plaintiffs are entitled to judgment on their claim for breach of contract, Count I of their first amended complaint, as it relates to policy forms FP-7923 and FP-7927.